# COURT OF APPEALS
## DECISION
## DATED AND FILED

## March 5, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

---

**Appeal No.  2019AP520-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  2016CF100

**IN COURT OF APPEALS
DISTRICT IV**

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

RICHARD A. BOIE,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Clark County:  JON M. COUNSELL and THOMAS W. CLARK, Judges.  *Affirmed*.

Before Blanchard, Graham, and Nashold, JJ.

¶1     BLANCHARD, J.   Richard Boie appeals a judgment of conviction for repeated sexual assault of the same child (including at least 3 violations of first

degree child sexual assault) in violation of WIS. STAT. § 948.025(1)(d) (2017-18).[1]
He also appeals the circuit court order denying his postconviction motion for a
new trial. Boie argues that the circuit court erroneously exercised its discretion in
granting the State's motion, made pursuant to WIS. STAT. § 908.08, to admit at
trial a video recording of a statement given by the victim, B.H. Specifically, Boie
contends that the court failed to make two findings required for admission. We
conclude that the circuit court implicitly made these findings.

¶2      Separately, Boie argues that his trial counsel provided ineffective
assistance by failing to move for a mistrial after B.H. testified multiple times
during in-person trial testimony that she could not remember the sexual assaults or
details regarding the assaults. Boie argues that counsel had three valid grounds to
request a mistrial, all based on B.H.'s lack-of-memory responses during her in-
person testimony: (1) the responses violated the specific requirement in WIS.
STAT. § 908.08(3)(e) that the circuit court find that admission of a recording will
not deprive the defendant "of a fair opportunity to meet allegations made in the
statement"; (2) the responses violated Boie's constitutional right to confront B.H
as a trial witness; and (3) it was "evident" from the responses that the prosecution
had "likely failed to disclose" to the circuit court, before the court decided the
recording admissibility issue, that the prosecution was aware that B.H. "lacked
memory of the alleged assaults." We conclude that trial counsel did not perform
deficiently in failing to move for mistrial because: (1) § 908.08(3)(e) is
exclusively an admissibility standard; (2) there was no Confrontation Clause

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted. The Honorable Jon M. Counsell presided at Boie's trial. The Honorable Thomas W. Clark presided over post-conviction proceedings.

violation under the reasoning of *State v. Rockette*, 2006 WI App 103, 294 Wis. 2d 611, 718 N.W.2d 269, and United States Supreme Court precedent discussed in *Rockette*; and (3) Boie fails to identify a valid basis for a mistrial based on an "evident" lack of disclosure that the prosecution had been obligated to provide.

¶3      Accordingly, we affirm.

## BACKGROUND

¶4      In June 2016, the State filed a criminal complaint charging Boie with repeated sexual assaults of B.H., a relative of Boie's. The complaint alleged that the assaults occurred between February 25, 2013, and December 21, 2014, when B.H. was 4 and 5 years old. The allegations were based on statements that B.H. made to investigators in February 2015, when she was 6, during a recorded interview at a child advocacy center. During the recorded interview, B.H. made statements incriminating Boie, which are summarized below.

¶5      The State filed a pretrial motion for an order permitting the State to introduce at trial the video recording of the February 2015 interview, pursuant to WIS. STAT. § 908.08. We discuss pertinent details of § 908.08 in the discussion below, but for background purposes it is sufficient to understand the following. Under § 908.08, circuit courts in criminal cases "may admit" video recordings of oral statements of children when proponents provide timely pretrial notice, and circuit courts "shall admit" such recordings if all criteria specified in the statute are met regarding characteristics of the child witness and the contents of the video. *See* § 908.08(1)-(3). As we recently characterized it, § 908.08 "is a hearsay exception created by the legislature to specifically address concerns relating to the admission of audiovisual recordings of statements by children." *State v. Mercado*,

No. 2018AP2419, unpublished slip op., ¶32 (WI App Feb. 4, 2020) (recommended for publication).

¶6      With that general background, the State's motion to allow the recording to be admitted contained various representations about B.H. and the video recording, consistent with an "offer of proof" required in WIS. STAT. § 908.08(2)(a). Section 908.08(2)(a) requires the State to file a pretrial "offer of proof showing the caption of the case, the name and present age of the child who has given the statement, the date, time and place of the statement and the name and business address of the camera operator." The State's motion also included the following observation: "As of today's date, it has been approximately two (2) years and two (2) months since the end of the charging period, which puts a tremendous burden on the memory of such a young child."

¶7      At a pretrial hearing, the circuit court and the parties discussed the State's motion to admit the video. The prosecutor argued in favor of admission and Boie made preliminary arguments against admission. The court gave Boie an opportunity to file written objections. As discussed in more detail below, Boie filed written objections and the court issued a written order granting the State's motion.

¶8      At trial, the court permitted the jury to watch and hear the video. B.H.'s recorded statements included the following: Boie "more than once" did "some stuff that isn't appropriate"; Boie "takes off his pants," "makes me take my pants off," and "wiggles" his "butt" (which, by her explanation, meant his penis) on her "butt" (which, by her explanation, meant her vagina); Boie touched her "butt" with his fingers; B.H. experienced at least some of this activity as being

"[s]quirmy" and "wet"; and it "hurt[]" when Boie "wiggled" on her body. The interviewer showed anatomical diagrams to B.H. for purposes of clarity.

¶9     The jury later heard testimony from B.H., then 9 years old and in third grade. Her testimony began with the circuit court using a colloquy with her in front of the jury, to establish that she could understand the difference between the truth and a lie. B.H. agreed to tell the truth. The prosecutor proceeded to briefly ask B.H. basic context-setting questions, such as when B.H. had lived where and with whom, without broaching the topic of the sexual assault allegations. Then, as discussed in more detail below, defense counsel proceeded to cross examine B.H., followed by brief re-direct by the State, followed by brief re-cross by the defense.

¶10     The jury found Boie guilty. Boie filed a postconviction motion seeking a new trial presenting arguments that we address below. The circuit court failed to rule on the postconviction motion within 60 days from the date of filing. Accordingly, the clerk of court entered an order denying the motion pursuant to WIS. STAT. § 809.30(2)(i). Boie appeals the judgment and the order.

## DISCUSSION

¶11     Before addressing the two sets of issues in turn, we further describe pertinent provisions in WIS. STAT. § 908.08, because both sets of issues require an understanding of the statute.

### I.     WISCONSIN STAT. § 908.08

¶12     As pertinent here, under WIS. STAT. § 908.08, a circuit court "may admit into evidence" at the trial in a criminal case "the audiovisual recording of an oral statement of a child who is available to testify," upon the proponent's timely

submission of a sufficient offer of proof. Sec. 908.08(1), (2)(a). At or before a mandatory hearing on the admissibility of the recorded statement, the court "shall view" the recording. Sec. 908.08(2)(b).

¶13     The legislature enacted WIS. STAT. § 908.08 to make it "easier, not harder, to employ videotaped statements of children in criminal trials and related hearings." *State v. Snider*, 2003 WI App 172, ¶13 & n.6, 266 Wis. 2d 830, 668 N.W.2d 784 (quoting 985 Wis. Act 262, § 1 for the following statement: "'This act is intended to allow children to testify in criminal, juvenile and probation and parole revocation proceedings in a way which minimizes the mental and emotional strain of their participation in those proceedings.'"). Without this evidentiary rule, a child's video recorded statement could not be admitted unless the proponent is able to show that the statement falls within an exception to the hearsay rule. *Id.*

¶14     As referenced above, the party seeking admission of the child's statement through the recording must file an "offer of proof" containing specified information: the caption of the case, the name and present age of the child, and specific details regarding the creation of the recording. WIS. STAT. § 908.08(2)(a). In addition, the party seeking admission has the burden of showing that the recording "is sufficiently trustworthy to be admitted into evidence," under the five criteria set forth in WIS. STAT. § 908.08(3)(a)-(e). *Snider*, 266 Wis. 2d 830, ¶15. Regarding these criteria in § 908.08(3), the circuit court "shall admit the recording" if the court finds that all are met, as pertinent here:

> (a) That the trial … in which the recording is offered will commence:
>
> 1. Before the child's 12th birthday [satisfied in this case]; ….
>
> ….

(b) That the recording is accurate and free from excision, alteration and visual or audio distortion.

(c) That the child's statement was made upon oath or affirmation or, if the child's developmental level is inappropriate for the administration of an oath or affirmation in the usual form, upon the child's understanding that false statements are punishable and of the importance of telling the truth.

(d) That the time, content and circumstances of the statement provide indicia of its trustworthiness.

(e) That admission of the statement will not unfairly surprise any party or deprive any party of a fair opportunity to meet allegations made in the statement.

Sec. 908.08(3).[2]

¶15 If the circuit court finds that the recording meets these criteria, it is to be admitted at trial, and either side may call the child to testify in person after the recording is played. WIS. STAT. § 908.08(5)(a). This allows the opposing party an opportunity for cross examination. Here, the State called B.H. to testify.

## II. Admission Of Recording Here

¶16 Boie argues that the circuit court erroneously exercised its discretion in admitting the video because the court failed to make either of the following two required findings: that B.H. was "a child who is available to testify," as required in WIS. STAT. § 908.08(1); and that "admission of the statement would not deprive Boie 'of a fair opportunity to meet allegations made in the statement,'" as required in § 908.08(3)(e). We address each part of this argument in turn. In each case we conclude that the court made pertinent implicit findings. *See **State v. Martwick***,

---

[2] When the child is aged 12-15 at the time of trial, the circuit court must apply an additional set of criteria, but here the child was younger than 12. *See* WIS. STAT. § 908.08(3), (4).

7

2000 WI 5, ¶31, 231 Wis. 2d 801, 604 N.W.2d 552 (when circuit court fails to make express findings, we may assume that the court made implicit findings that support its decision); *State v. Echols*, 175 Wis. 2d 653, 673, 499 N.W.2d 631 (1993) (appellate court may assume that circuit court made implicit factual findings supporting its decision regarding credibility of witnesses who provided testimony contrary to the court's decision).

¶17     Our pertinent standards of review are well established:

> Trial courts have broad discretion to admit or exclude evidence and to control the order and presentation of evidence at trial; we will upset their decisions only where they have erroneously exercised that discretion. The trial court acts erroneously when its discretionary ruling contravenes nondiscretionary statutes or is based on an incorrect interpretation of the law.

*State v. James*, 2005 WI App 188, ¶8, 285 Wis. 2d 783, 703 N.W.2d 727 (citations omitted). However, to the extent that we interpret and apply WIS. STAT. § 908.08, this presents issues of law that we review independently. *See id.*

### A. "Child Who Is Available To Testify"

¶18     Boie argues that the circuit court should not have admitted the recording because the court did not find that B.H. was "a child who is available to testify," as required in WIS. STAT. § 908.08(1). The State argues that Boie forfeited this available-to-testify argument by failing to present it to the circuit court. We assume without deciding that Boie did not forfeit the argument, and conclude that the court implicitly made a finding that B.H. would be available to testify at trial and that this implicit finding is readily supported by the record.

¶19     We begin by summarizing our understanding of Boie's available-to-testify argument. He contends that WIS. STAT. § 908.08(1) creates a substantive

requirement of "availability," apart from the other requirements of § 908.08, and that this additional subsection (1) requirement has two components. The first component of availability is *physical* availability of the child to "take the stand" under § 908.08(5), after the recording has been played for the jury. We agree with Boie that, particularly when interpreted in light of the direction in subsections (3) and (5) of § 908.08, subsection (1) requires the circuit court to find that the child will be physically available to testify in person at trial. But we need not dwell on this issue. Boie does not dispute that B.H. "was physically available to take the stand." Further, he fails to develop a supported argument that the circuit court, in assessing the recording's admissibility, did not have a strong basis to find that B.H. would be physically available to testify. And, we see no basis in the record for an argument that the court was not entitled to rely on the express expectations of both sides that B.H. would be physically available to testify.

¶20 Turning to what Boie apparently contends is a second component of availability, he would derive this from statutory language outside WIS. STAT. § 908.08, namely, the definition of unavailable witnesses in WIS. STAT. § 908.04(1)(c). Boie suggests that § 908.04(1)(c) must be interpreted to modify the phrase "a child who is available to testify" in § 908.08(1). Paragraph 908.04(1)(c) is located in a provision addressing hearsay exceptions based on witness availability:

> "Unavailability as a witness" includes situations in which the declarant:
>
> ….
>
> (c) Testifies to a lack of memory of the subject matter of the declarant's statement.

Boie suggests that the available-to-testify requirement in § 908.08(1) includes an obligation of the court to make a pre-admission finding that the child witness will not testify "to a lack of memory of the subject matter."

¶21 We are not persuaded that the "unavailability as a witness" definition used for purposes of hearsay exceptions in WIS. STAT. § 908.04(1)(c) is grafted onto the available-to-testify requirement of § 908.08(1). If that were the legislative intent, it would have been easy to cross reference these separate statutes, or to incorporate one into the other. Instead, the text of § 908.08 strongly signals that it is a self-contained set of rules:

> In any criminal trial … the court … may admit into evidence the audiovisual recording of an oral statement of a child who is available to testify, *as provided in this section*.

Sec. 908.08(1) (emphasis added).

¶22 It is not clear what is left of Boie's available-to-testify argument when it is understood that WIS. STAT. § 908.04(1)(c) is not part of WIS. STAT. § 908.08. If he means to argue that his assertions to the circuit court in opposing admission of the recording should have prompted the court to find that B.H. would physically appear but would fail to provide meaningful testimony, we now explain why we disagree.

¶23 Boie asserted to the circuit court that, because the period of alleged crimes stretched over 22 months, and because the recorded interview had occurred more than two years earlier, "it is anticipated" that B.H. would testify on cross examination that she could not recall specifics of the alleged sexual assaults. In addition, Boie asserted that B.H. "may refuse to submit to cross examination" or "may 'clam up' on the stand." However, these assertions did not provide the court

with a reasonable basis to find any of the following regarding B.H.: that she lacked specific memories, that she was likely to decline to submit to cross examination altogether, or that she was likely to generally "clam up."

¶24 In short, Boie raised only general concerns about the possible inability of the child to testify in person, which resembles concerns addressed in *James*. There, based on our interpretation of WIS. STAT. § 908.08(5)(a), we reversed a circuit court decision to require the State to put a child witness on the stand before the State would be allowed to present the child's recorded statement. *See James*, 285 Wis. 2d 783, ¶¶1, 25. The circuit court made this ruling based on a concern that the child might behave as child witnesses sometimes had in the circuit court's experience, namely, by refusing to submit to cross examination. *Id.*, ¶¶1, 4-7. The circuit court reasoned that the defense might never have an opportunity for cross examination. *Id.*, ¶¶1, 4-7, 10. We rejected that argument based on our interpretation of § 908.08(5)(a). As pertinent here, we noted that the defense argument involved "the mere hypothetical possibility that" the child would "'clam up' on the stand," and that James had failed to point to any suggestion in the record before the circuit court that the child was "disinclined to testify or that the State ha[d] in bad faith made an empty promise" of witness availability. *Id.*, ¶22. We noted that § 908.08(3)(e) "merely asks the trial court to discern whether, given what it knows *at the time* it assesses admissibility, allowing a videotaped statement into evidence would 'deprive any party of a fair opportunity to meet allegations made in the statement.'" *Id.*, ¶24 (italics in original).[3]

---

[3] We think that the interpretation of WIS. STAT. § 908.08(5)(a) in *State v. James*, 2005 WI App 188, 285 Wis. 2d 783, 703 N.W.2d 727, is dubious. Paragraph (5)(a) contains two rules.

(continued)

11

¶25    The procedural posture of this case differs from that in *James*. And, it is true that the circuit court's concern in *James* was that child witnesses in general have trouble testifying, whereas here Boie called to the circuit court's attention the specifics of the length of the period of alleged criminal conduct and the passage of time since the recorded interview. Nonetheless, Boie offered the circuit court only a "mere hypothetical possibility" that B.H. would not provide relevant testimony on cross examination. *See id.*, ¶22. Giving reasonable effect to the text and purpose of WIS. STAT. § 908.08, it cannot be a sufficient objection to admission of a recording that the child might have trouble recalling events, given the general circumstances.

¶26    Boie asserts that, to establish admissibility, "the State had an obligation to show that [B.H.] would testify to the allegations in the prior statement." He may intend to argue that the available-to-testify requirement in WIS. STAT. § 908.08 obligates the State to, in some sense, certify that the child will testify in a certain manner or to certain allegations. If so, it is difficult for us to imagine what such certification would look like in a given case.

¶27    Boie also argues that, as the proponent of the recording, the State had to disclose B.H.'s "inclination" to testify. This may be a more modest

---

First, the party offering the recorded statement "may" call the child as a witness "immediately" after the recorded statement is shown. *See* § 908.08(5)(a). Second, if the party offering the recorded statement does not call the child, upon the request of the other party, the court "shall order" that the child take the stand "immediately" following the showing of the recorded statement. *See id.* We do not see in this language a prohibition against the proponent calling the child before offering the recorded statement. However, the *James* interpretation of § 908.08(5)(a) is binding authority. More to the point here, that interpretation is not the reason we cite *James*. Our focus, as discussed in the text, is on the observations of the *James* court about the nature of the cross examination to which the non-proponent of the recording is entitled before that party is "deprive[d]" "of a fair opportunity to meet allegations made in the [recorded] statement," under § 908.08(3)(e).

12

argument that the State is required to disclose awareness of deficiencies in a child's general ability or willingness to testify. However, whether on a general basis or allegation-by-allegation, Boie fails to connect this purported disclosure obligation to a characterization of the requirements for admission under WIS. STAT. § 908.08 that we do not reject elsewhere. Further, he makes no effort to ground his argument in § 908.08(2)-(3)'s more specific description of the roles of the proponent, the potential opponent, and the court in assessing and sharing pertinent information that will allow the court to exercise its discretion in determining admissibility. That is, Boie provides no support for the proposition that a proponent's burden includes affirmatively dispelling all foreseeable objections that an opponent might have to admission, given the detailed framework set forth in § 908.08(2)-(3).

¶28 We note, consistent with discussion in *James*, that it would be bad faith for the State to represent for purposes of an admissibility determination under WIS. STAT. § 908.08 that the child witness is "available to testify" when the prosecution is aware that the child, while physically available to appear on the witness stand at trial, will "clam up" once on the stand. *See James*, 285 Wis. 2d 783, ¶22. But the circuit court here was not presented with an offer of proof or supported argument that the prosecution had such knowledge about B.H.

¶29 In sum, the circuit court had ample basis to find that B.H. was physically available to testify, and no basis to conclude at the time the court was required to rule on the admissibility of the recording that B.H. would be unable or unwilling to testify generally or as to any material allegation. Thus, assuming without deciding that Boie preserved the available-to-testify objection, the circuit court implicitly addressed and resolved that objection in a reasoned manner consistent with the terms of WIS. STAT. § 908.08 and *James*.

13

### B. "Fair Opportunity To Meet Allegations Made In The Statement"

¶30    Boie argues that the circuit court should have not admitted the recording for the separate reason that the court failed to make a finding that admission would not "deprive" Boie "of a fair opportunity to meet allegations made in the statement," as required in WIS. STAT. § 908.08(3)(e).  We reject this fair-opportunity argument because the court implicitly concluded, based on specific findings made by the court, that Boie would not be deprived of a fair opportunity to meet the recorded allegations.

¶31    As partially summarized above, Boie presented the following to the circuit court as the bases for his fair-opportunity argument:  (1) due to the lengthy period of alleged crimes charged by the State and the fact that the recorded interview had occurred "over two years ago," "it is anticipated" that B.H. would testify on cross examination that she could not recall specifics of the alleged sexual assaults; (2) B.H. "may refuse to submit to cross examination" or "may 'clam up' on the stand"; and (3) B.H.'s statements in the recorded interview were insufficiently precise in describing when any sexual assaults occurred.  On this last point, during the recorded interview B.H. did not provide details regarding the timing of the incriminating conduct she described, but instead said only that she was sexually assaulted "sometimes" when she visited Boie during the pertinent time period, and that it occurred "more than once."

¶32    As we have already explained regarding points (1) and (2), Boie provided the court with no basis before the recording was admitted for the court to find that B.H., as a live trial witness, would lack specific memories, decline to submit to cross examination, or generally "clam up."  This leaves Boie's thinly developed assertion to the circuit court that, because B.H.'s recorded statements

14

were not detailed in describing when the conduct at issue occurred, this would deprive him at trial of "a fair opportunity to meet allegations."

¶33    On this point, Boie left unexplained to the circuit court how B.H.'s lack of precision about timing during the recorded interview would deprive him "of a fair opportunity to meet allegations made in the statement." When allegations are vague or imprecise, this may naturally *assist* the accused in convincing the jury that the State cannot carry its burden of proof. And, in this context, Boie gave the circuit court no reason to think that the lack of precision in the allegations in the recording here would deprive him of a fair opportunity to meet the allegations at trial.

¶34    Turning to the circuit court's written order admitting the recording, it included the following findings. The recording was of good quality. It was made "relatively close in time to the events in question[,] lending to its credibility." Boie had been provided with a copy in August 2016, which had been 9 months earlier. In an extended passage, the court further stated:

> The court has viewed the content and circumstances of the statement and concludes that there are sufficient indicia of the statements['] trustworthiness. Specifically, the interviewer did not ask leading questions and allowed the child to develop her own answers. Where such was not possible, the interviewer used multiple choice questions as opposed to single choice questions with only a yes/no response. The child answers the questions asked in a manner that the court would expect a young child to answer. The court did not hear words or phrases that would seem out of character for the language development of a young child. Thus the language used by the child does not suggest coaching of answers by a third party.
>
> As [Boie] points out, some of the child's answers are arguably inconsistent. The same can be said, however, for many of the witnesses (including adults) that the court sees almost every[] day. Such inconsistencies are not at such level that the court would find the audiovisual

15

recording inadmissible. Rather, any inconsistencies are what the court would expect to see from a young child talking about a difficult subject. The jury may well consider such matters to raise credibility issues when weighing the evidence.

¶35 We interpret these findings and observations to reflect an implied finding that, under any reasonable interpretation of the phrase "fair opportunity to meet allegations," Boie would have a fair opportunity. In essence, the court found that this opportunity would be no less robust than that which defense counsel routinely face in attempting to address recorded statements by young children on difficult subjects. This includes the court's specific observations that the recording was made close in time to the events described and that Boie and his counsel had had 9 months to study and investigate pertinent aspects of the recording.

¶36 In sum, in response to a thinly supported fair-opportunity objection, the circuit court implicitly addressed and resolved that objection in a reasoned manner, finding that under the circumstances Boie would have a fair opportunity to meet allegations made in the recording.[4]

### III. Ineffective Assistance

¶37 Boie argues that his trial counsel provided ineffective assistance by failing to move for a mistrial after B.H., during live cross examination at trial, testified multiple times that she could not recall the sexual assaults or details regarding the assaults. Boie's argument is that counsel should have brought a

---

[4] Boie briefly argues that it was ineffective assistance of counsel to fail to object differently to the State's motion to admit the recording, but he fails to show deficiency and prejudice on any basis that we do not reject elsewhere in this opinion.

mistrial motion and, if brought, it should have been granted for three reasons: (1) based on WIS. STAT. § 908.08(3)(e), it became evident that Boie was deprived of "a fair opportunity to meet allegations made in the statement"; (2) B.H.'s responses to some questions violated his constitutional right to confront B.H as a trial witness; and (3) the State "probably withheld" information about B.H.'s lack of memory that it had a duty to disclose. We explain below why we reject each of the three subarguments.

¶38 To prove ineffective assistance of counsel, a defendant must

> establish that counsel's performance was deficient and that the deficient performance was prejudicial. If the defendant fails to satisfy either prong, we need not consider the other.
>
> Whether trial counsel performed deficiently is a question of law we review de novo. To establish that counsel's performance was deficient, the defendant must show that it fell below "an objective standard of reasonableness."

*State v. Breitzman*, 2017 WI 100, ¶¶37-38, 378 Wis. 2d 431, 904 N.W.2d 93 (citations omitted). Pertinent here, under these standards, it is not deficient performance to fail to bring a motion that would have been unsuccessful if brought.

¶39 Whether a defendant's right to confrontation has been violated is an issue of constitutional fact, subject to independent appellate review. *Rockette*, 294 Wis. 2d 611, ¶19 (citing *State v. Stuart*, 2003 WI 73, ¶21, 262 Wis. 2d 620, 664 N.W.2d 82). "We will 'adopt the circuit court's findings of historical fact, unless they are clearly erroneous, but we independently apply those facts to the constitutional standard.'" *Id.* (quoting *Stuart*, 262 Wis. 2d 620, ¶21).

¶40    In order to place Boie's ineffective assistance-mistrial arguments in proper context, it is necessary to understand a significant flaw in a factual premise underlying the arguments. The false premise is that, during cross examination at trial, B.H. "either would not, or could not, testify about the subject matter of her prior statement." He alternatively refers to B.H. having a "complete lack of memory on the witness stand," as if she had asserted a lack of memory in response to all questions. In fact, B.H. did not fail to answer questions put to her on the subject matter of her prior statement, and certainly did not claim a "complete lack of memory." Instead, as we now explain in more detail, she gave extensive, responsive testimony, although she did testify to a lack of memory regarding key points.

¶41    Between the arguments Boie makes and our review of the record, we can identify only a single instance in which B.H. even initially refused to answer any question put to her. And, in that single instance, when Boie's counsel later repeatedly pressed the point, she did not persist in refusing to answer, but instead testified that she could remember only "a little" and could not remember specific details that counsel inquired about. It is true that, as Boie now emphasizes, on multiple occasions when asked about the alleged sexual assaults, B.H. testified that she did not remember what happened. Indeed, she never gave detailed testimony regarding any conduct that could be construed as alleging a sexual assault. But testifying to a lack of memory is not the same thing as not answering questions put to her.

¶42    B.H. not only answered all questions put to her during cross examination (with the single, initial exception highlighted in a passage that we shortly quote), she made several statements clearly incriminating Boie. This included the following exchange, with emphasis on a key statement:

18

Q. Did [Boie] ever [kiss you]?

A. I don't remember.

Q. Okay.

A. But I don't think so.

Q. So he never kissed you?

A. No—well, yeah.

Q. Okay. When did he kiss you?

A. When I was in the middle of it.

Q. Middle of what?

A. *When he was doing it.*

Q. Doing what?

A. (No response).[5]

Q. I know it is a hard question, but I need you to answer it, [B.H.].

[A.] Can I have a minute please? [Court orders break]

Following the break ordered by the court, Boie's counsel moved on to a different line of questions. One reasonable reading of this testimony, when considered in the context of the recorded interview and B.H.'s knowledge of the topic of the trial, is that the only time Boie kissed her was when he was sexually assaulting her.[6] When Boie's counsel returned to the topic, several times, B.H. testified that

[5] This was the one time during cross examination when B.H. did not initially answer a question put to her. However, she was consistently responsive, including testifying on this same point that she could remember "some things that happened" involving Boie kissing her when "doing it," but she could not recall "all" things. She testified that she recalled "a little," although she did not provide any details.

[6] This is plainly how trial counsel interpreted this testimony. Later during the cross examination of B.H., counsel made use of a transcript of the recorded interview to attempt to impeach B.H., based on the evident premise that B.H. had testified that the only time Boie kissed her was when he was sexually assaulting her. Indeed, during cross examination of B.H., trial

(continued)

she could not remember what Boie "doing it" meant or remember other details about when he was "doing it."

¶43 Separately, B.H. later testified as follows:

Q. But everything that you told [the interviewer during the recorded interview] that we have been kind of reading[7] and everything else, too, on this whole transcript?

A. Yep.

Q. That was all true[;] you weren't lying to [the interviewer], were you?

A. No.

....

Q. But what you told [the interviewer] was the truth?

A. I think so, yeah, yeah, it was.

Boie's counsel did not directly challenge these affirmations by B.H. that she had told the truth during the recorded interview. In a similar vein, when trial counsel asked B.H. whom she had told that Boie was "doing it," she responded that she

---

counsel used B.H.'s phrase "doing it" as obvious shorthand for committing sexual assault. For example, there was this exchange:

Q. Okay. But you are saying he was doing it. Do you know when it started[,] like what year?

A. No.

[7] The phrase "[w]e have been kind of reading" referred to a method that Boie's counsel used during cross examination, with seemingly full cooperation by B.H., in reading out loud from a transcript of the video recording. Trial counsel would "play" the interviewer by reading that part out loud, and she asked B.H. to "play" herself by reading her parts out loud.

had told either her mother or father, and a grandmother. This was yet another confirmation of the allegation.[8]

¶44 Having provided those clarifications about the false premise that, in Boie's words, B.H. "either would not, or could not, testify about the subject matter of her prior statement," we turn to the three ineffective assistance-mistrial arguments.

¶45 Boie's first ineffective assistance argument is that, when B.H. testified to a lack of detailed memory about the sexual assaults, this should have triggered a motion for a mistrial based on the admissibility requirement in WIS. STAT. § 908.08(3)(e) that admission will allow him "a fair opportunity" at trial "to meet the allegations made in the statement." This argument is easily resolved for at least the reason that § 908.08(3)(e) is framed exclusively as an admissibility standard. This standard is either properly satisfied, or it is not, based on "what

---

[8] We note that, beyond this testimony incriminating Boie, B.H. provided substantive answers during cross examination on a broad range of potentially pertinent topics, such as: her potential bias (who she had talked to about giving testimony and whether "the DA and your mom" had asked about the sexual assaults); whether she had herself ever watched the video (answer: no); whether she had "ever lied before" (answer: yes, when she said she had not concocted a home-made form of "slime"); whether she could recognize the difference between true and false information (extensive probing, using a wide range of myths and hypotheticals); extensive questions about whether she receives hugs or kisses from close relatives and whether she likes it; when she visited Boie and under what circumstances; why she was crying during her testimony and whether testimony was upsetting her; whether when she was 4 years old she knew how women become pregnant (answer: no) whether her grandmother had told her what "sex" is (answer: no); and whether she had yet talked with friends about "kissing and boys and stuff" (answer: no).

Separately, on redirect examination, the prosecutor asked questions to drive home B.H.'s age, having her explain for example that she had only just recently learned to tie her shoes and lost her first tooth. During a brief re-cross examination, defense counsel merely asked a few clarifying questions about where B.H. had attended kindergarten and the first years of elementary school.

[the court] knows *at the time* it assesses admissibility." *See James*, 285 Wis. 2d 783, ¶24 (italics in original). Boie presents no developed argument to the contrary.

¶46 Boie's second ineffective assistance argument is that, when B.H. testified to a lack of memory at trial, this should have triggered a motion for mistrial based on a violation of his constitutional right to confront B.H. as a witness.[9] However, we are obligated to follow *Rockette*, in which this court interpreted the U.S. Supreme Court as having applied reasoning that creates the following Confrontation Clause rule:

> [A] witness's claimed inability to remember earlier statements or the events surrounding those statements does not implicate the requirements of the Confrontation Clause …, so long as the witness is present at trial, takes an oath to testify truthfully, and answers the questions put to him or her during cross-examination.

*Rockette*, 294 Wis. 2d 611, ¶26.

¶47 We now explain pertinent aspects of *Rockette* and then address Boie's failure to show that its reasoning does not apply here.

¶48 A witness called by the prosecution at Rockette's trial had given testimony at the preliminary hearing in the case that incriminated Rockette. *Id.*, ¶¶5, 8. However, at trial, the witness first testified that he had had "memory difficulties" when he gave the incriminating preliminary hearing testimony, and

---

[9] "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. "In all criminal prosecutions the accused shall enjoy the right ... to meet the witnesses face to face." Wis. Const. art. I, § 7. The federal Confrontation Clause and its Wisconsin analog are "'generally' coterminous," and the parties here give us no reason to make further reference to the Wisconsin provision. *See State v. Rhodes*, 2011 WI 73, ¶28, 336 Wis. 2d 64, 799 N.W.2d 850.

later in the trial testified that he could not recall testifying at the preliminary hearing. *Id.* The witness also testified repeatedly that he could not recall additional inculpatory statements that he had given to police. *Id.*, ¶¶6-7. The witness testified that he had not sent a letter to the prosecutor incriminating Rockette, although he conceded on cross examination that his signature might have been at the end of the letter. *Id.*, ¶10. The prosecutor was allowed to offer the incriminating letter into evidence and read it aloud. *Id.* After the witness gave lack-of-memory testimony, Rockette's counsel raised a Confrontation Clause objection, and the circuit court stated that the witness was "'in fact having selective memory loss, he is trying to avoid his prior statements.'" *Id.*, ¶¶8-9. On cross examination, the witness in *Rockette* was asked whether he was refusing to provide information at trial "'because you don't want to admit that you gave false [incriminating] information to the court and law enforcement,'" and he responded that he did not know. *Id.*, ¶11. He also answered "I don't know" when asked if the reason he claimed a lack of memory about the charged criminal activity was because he was not there. *Id.*

¶49 Rockette argued that his Confrontation Clause rights were violated when the witness testified to memory loss, because this meant that the witness "could not be cross-examined on the veracity" of incriminating statements that were imputed to him at trial. *Id.*, ¶18. The court rejected this argument on the ground that "the Confrontation Clause does not place a restriction on the use of the statements" when the witness "was present at trial, took an oath to testify truthfully[,] and answered the questions presented to him by Rockette's counsel." *Id.*

¶50 The court in *Rockette* explained that, in *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004), "the United States Supreme Court affirmed the

23

principle that 'when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his [or her] prior testimonial statements,'" and therefore if the witness in *Rockette* "is deemed to have appeared for cross-examination at Rockette's trial, the use of his statements does not implicate Rockette's rights under the Confrontation Clause." *Rockette*, 294 Wis. 2d 611, ¶20.

¶51   For the definition of what it means for a witness to "appear[] for cross-examination," the *Rockette* court turned to *Delaware v. Fensterer*, 474 U.S. 15 (1985) (per curiam), and *United States v. Owens*, 484 U.S. 554 (1988). *Rockette*, 294 Wis. 2d 611, ¶¶22-23.  *Fensterer* was a circumstantial homicide prosecution in which the prosecution called a purported expert in hair comparison. *Fensterer*, 474 U.S. at 16.  The expert testified that a hair sample had been forcibly removed, but also testified that he could not recall how he had determined that the hair had been forcibly removed.  *Id.* at 16-17.  The *Rockette* court noted that, in holding that the expert's lack of memory on a potentially key issue did not present a Confrontation Clause problem, the Supreme Court explained in *Fensterer* that the Confrontation Clause does not guarantee that a witness's testimony will not be "'marred by forgetfulness, confusion, or evasion.'" *Rockette*, 294 Wis. 2d 611, ¶22 (quoting *Fensterer*, 474 U.S. at 21-22).

¶52   In *Owens*, a federal prison employee who had been severely beaten told investigators during an interview that Owens was the assailant.  *Owens*, 484 U.S. at 556. At trial, the employee testified that he remembered having identified Owens as his assailant during the interview, but on cross examination the employee admitted that he could not remember seeing his assailant and also acknowledged significant memory problems due to the beating.  *Id.*  Owens argued that the employee's asserted memory problems violated Owens's

24

confrontation clause right to cross examine the witness. *See id.* at 556-57. As the *Rockette* court noted, the Supreme Court in *Owens* (per the author of *Crawford*, Justice Scalia) rejected this argument on the ground that "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness's demeanor satisfy the constitutional requirements." *Rockette*, 294 Wis. 2d 611, ¶23 (quoting *Owens*, 484 U.S. at 559-60).

¶53 The court in *Rockette* summarized the shared teachings of *Fensterer* and *Owens* as follows:

> [T]he key inquiry for Confrontation Clause purposes is whether the declarant is present at trial for cross-examination, takes the oath to testify truthfully[,] and answers questions asked of him or her by defense counsel. These cases also plainly inform us that the Confrontation Clause does not guarantee that the declarant's answers to those questions will not be tainted by claimed memory loss, real or feigned.

*Id.*, ¶24. *Rockette* notes that the rule that it adopts based on this U.S. Supreme Court precedent matches the rule applied by other federal and state courts. *Id.*, ¶26.

¶54 The court in *Rockette* made clear that this rule applies whether the purported memory loss appears to be "real or feigned," and it appeared that the memory loss in *Rockette* was in fact feigned. *See id.*, ¶¶5-16, 24, 27. The rule we must follow from *Rockette* is all the more comprehensive because it applies regardless of whether a court might find that the memory loss testified to by a witness on cross examination is feigned.

¶55 The court explained in *Rockette* that a case of this type is distinguishable from "cases where the witness either invokes a Fifth Amendment privilege and remains silent during his or her testimony or refuses to be sworn in

or testify at all." *Id.*, ¶27 (citing ***Douglas v. Alabama***, 380 U.S. 415 (1965) and ***Robinson v. State***, 102 Wis. 2d 343, 352-53, 306 N.W.2d 668 (1981)). The court explained that, unlike the witness who exercises a right to remain silent, the witness in ***Rockette*** was confronted by defense counsel on his "recollection, motive and interest and hold his testimony up to the jury so that the jury could decide whether it was worthy of belief." *Id.*

¶56 After the State relies heavily on ***Rockette*** in its brief on appeal, Boie apparently intends to argue, perhaps for purposes of preserving this issue for potential review by our supreme court, that the court in ***Rockette*** wrongly interpreted precedent of the U.S. Supreme Court and of our supreme court. (We are bound by prior interpretations of this court, but our supreme court is not). Boie argues that the court in ***Rockette*** failed to recognize that our supreme court, in a case pre-dating ***Rockette***, quoted U.S. Supreme Court authority to the effect that reversal would be merited if a witness's "'apparent lapse of memory so affected … [the] right to cross-examine as to make a critical difference in the application of the Confrontation Clause.'" *See* ***State v. Lenarchick***, 74 Wis. 2d 425, 443-44, 247 N.W.2d 80 (1976) (quoting ***California v. Green***, 399 U.S. 149, 168 (1970)). However, ***Fensterer*** and ***Owens*** both post-date ***Green***, and the ***Owens*** court cited ***Green*** in explaining its categorical rule that "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisf[ied] the constitutional requirements." ***Owens***, 484 U.S. at 560 (citing ***Green***, 399 U.S. at 158-61). Thus, it appears that the ***Rockette*** court properly relied on the current legal rule as established by the U.S. Supreme Court.

¶57 Boie contends that he "had no means to confront B.H. on the meaning, accuracy, or truth of the allegations made in the video, nearly all of

which were vague and lacking coherence as to time, place and activity." The first problem with this argument is that it rests on the false premise that we have already addressed at length. The jury in this case had numerous opportunities to assess B.H.'s credibility during extensive live testimony, including testimony that directly incriminated Boie. The jury had the opportunity to evaluate the meaning and significance of each instance of her claimed lack of memory. The second problem is that it fails to come to grips with the rationale explained in *Rockette* as to the scope of Confrontation Clause protection, which we are obligated to follow.

¶58    Boie's third ineffective assistance argument is the following: "trial counsel should have moved for a mistrial when it became evident the State likely failed to disclose information relevant to the circuit court's admissibility determination," namely, information that B.H. "lacked memory of the alleged assaults." Boie argues that he was entitled to an evidentiary hearing to which he "could have subpoenaed witnesses, including the prosecutor, to determine precisely what the State knew about [B.H.'s] willingness or ability to testify at the time of admissibility, or at trial, either of which should have been shared with the trial court." Boie bases this argument in part on the due process right that criminal defendants have to any favorable evidence "material either to guilt or to punishment" that is in the State's possession, *Brady v. Maryland*, 373 U.S. 83, 87 (1963), including any evidence that may be used to impeach a witness called by the State, *Giglio v. United States*, 405 U.S. 150 (1972).[10]

---

[10] To clarify, Boie does not allege that trial counsel had reason to suspect that the prosecution possessed evidence that B.H. had made statements at any time that were materially inconsistent with those reflected on a video recording. That would be a different claim.

27

¶59     This third ineffective assistance argument is not well developed. Boie makes repeated references to the effect that the prosecution "must have known," at some unidentified time, that "there was a problem" with B.H. as a witness, namely, that she was either "disinclined to testify" or because she had "no memory of the accusations." This includes the concept that "[a]t best, the State willfully chose to remain ignorant" of "a problem."

¶60     As the primary basis for this claim, Boie points to B.H.'s testimony on cross examination that, before testifying at trial, she had talked about the subject of her testimony with her mother and father, with a district attorney's office victim-witness coordinator, and with a prosecutor. Boie apparently means to argue that B.H.'s meeting with representatives of the State must have alerted them to B.H.'s lack of memory regarding the material allegations in the recording. Boie further contends that the State's allegedly advance knowledge of B.H.'s memory problems explains the State's decision not to ask B.H. during her testimony to repeat details of the allegations contained in the recording.

¶61     We reject Boie's argument because he fails to show how the mere fact that representatives of the State met with B.H. before trial establishes that the State was likely to know, at a pertinent time, any particular fact that it was obligated to disclose under any legal standard articulated by Boie. Similarly, we fail to see how the State's decision not to pose questions to B.H. during her live testimony about details of the alleged criminal conduct could not have been the result of any number of permissible strategic decisions having nothing to do with advance knowledge that B.H. was unable or unwilling to testify generally or as to any particular point. To repeat, this case did not involve a refusal to testify and trial counsel subjected B.H. to an extensive cross examination.

¶62    On a related note, Boie makes a passing allegation that trial counsel was aware of evidence that the prosecution "instructed" B.H., before she testified, "to testify [that] she could not recall." We now briefly explain why we reject this aspect of Boie's third ineffective assistance argument, based on what appears to be the most pertinent evidence on this topic. After B.H. testified that she had met with the prosecutor and others before trial, there was the following exchange:

> Q. And what did [the prosecutor] tell you to say?
>
> A. She just showed me and told me to say yes or no and what's true and to like put my right hand up.
>
> Q. Okay. So did she tell you how to answer certain questions?
>
> A. Yes.

Trial counsel then turned to a new topic, and did not pursue the last answer. Taken in context, including the reference to the prosecutor directing B.H. to "say … what's true," Boie fails to show that it was objectively unreasonable for Boie's trial counsel not to interpret this testimony (or any other references that Boie now makes in his briefing) as providing a basis to suspect that the prosecutor had instructed B.H. to falsely testify that she could not remember events. Boie references a place in the record reflecting that the prosecutor met with B.H. during a break in her cross examination. However, he fails to point to evidence raising a reasonable inference that the prosecutor coached or otherwise improperly influenced B.H. at that time or any other time.

## CONCLUSION

¶63    For all of these reasons, we affirm the judgment of conviction and the order denying the postconviction motion.

29

*By the Court*.—Judgment and order affirmed.

Not recommended for publication in the official reports.

No.    2019AP520-CR(C)


¶64    GRAHAM, J. (*concurring*).  I agree that the majority has correctly stated Wisconsin law as it is regarding the Confrontation Clause.  I write separately because, if I were writing on a clean state, I would conclude that the WIS. STAT. § 908.08[1] procedure will deprive a defendant of his constitutional right to confront his accusers in some cases, and that this is such a case.

¶65    WISCONSIN STAT. § 908.08 sets forth procedure for admitting audiovisual recordings of statements of children under specific circumstances.  It has dual purposes, both of which are laudable.  One purpose is to make it easier for child victims to testify in court through a procedure that "minimizes the mental and emotional strain of their participation in those proceedings."  1985 Wis. Act 262 § 1.  A second purpose is to safeguard the defendant's confrontation right.  *Id.* We have explained that § 908.08 "specifically builds a confrontation opportunity into its procedures."  *State v. Tarantino*, 157 Wis. 2d 199, 215, 458 N.W.2d 582 (Ct. App. 1990).

¶66    The Sixth Amendment right to confront accusers through cross-examination is "one of the safeguards essential to a fair trial."  *Pointer v. Texas*, 380 U.S. 400, 404 (1965) (quoting *Alford v. United States*, 282 U.S. 687, 692 (1931)).  And to serve as an effective safeguard, the opportunity to cross-examine must be "meaningful."  *See State v. Lenarchick*, 74 Wis. 2d 425, 434, 247 N.W.2d 80 (1976); *see also id.* at 441.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶67 Recent state and federal cases set a low bar for meaningful cross-examination by suggesting that an accuser's memory loss (real or feigned) does not matter. In reaching that conclusion, these cases explain that "the very fact that [a witness] has a bad memory" is "often a prime objective of cross-examination." **State v. Rockette**, 2006 WI App 103, ¶23, 294 Wis. 2d 611, 718 N.W.2d 269 (citing **United States v. Owen**, 484 U.S. 554, 559 (1988)).[2] In other words, a witness's selective memory loss on the stand may actually bolster the defense by undermining the witness's credibility.

¶68 Not so here, as a result of the procedure set forth in WIS. STAT. § 908.08. Here, the video displayed to the jury, which was taken several years prior, depicts a younger version of B.H. giving detailed testimony about specific incidents of sexual assault. Video can be extremely compelling, and child victims of sexual assault will naturally arouse a jury's sympathy. The videotaped testimony, which substitutes for a direct examination under § 908.08, allows the jury to observe the child's demeanor and to hear the child's accusations in her own voice. Boie did not have any opportunity to ask B.H. questions at the time the recorded statement was made. And by the time he did have the opportunity to question her at trial, B.H. testified that she didn't remember much of anything about the substance of her allegations.

---

[2] *See also* **California v. Green**, 399 U.S. 149, 159 (1970) ("The most successful cross-examination at the time the prior statement was made could hardly hope to accomplish more than has already been accomplished by the fact that the witness is now telling a different, inconsistent story, and—in this case—one that is favorable to the defendant. We cannot share the [] view that belated cross-examination can never serve as a constitutionally adequate substitute for cross-examination contemporaneous with the original statement.").

2

¶69    The WIS. STAT. § 908.08 procedure makes the circumstances different from ***Rockette***, where the witness was impeached with his prior statements.    Unlike in ***Rockette***, B.H.'s claimed memory loss would not undermine the credibility of her allegations; instead, the jury would more likely believe it to be the natural result of her trauma, her young age, and the significant passage of time.  The jury would be left with compelling video testimony and only one version of events—untested by cross-examination—to believe.[3]

¶70    Older cases recognize that "the inability to cross-examine the witness at the time [she] made [her] prior statement cannot easily be shown to be of crucial significance *as long as the defendant is assured of full and effective cross-examination at the time of trial*." ***California v. Green***, 399 U.S. 149, 159 (1970) (emphasis added).  But the "truth of [a witness's] earlier statement is not tested by cross-examination with regard to its substantive content" when "complete failure of recollection is claimed." ***Lenarchick***, 74 Wis. 2d at 443-44 (quoting ***United States. v. Payne***, 492 F.2d 449 (4th Cir. 1974)).  These cases acknowledge that a witness's "apparent lapse of memory" may "so affect[]" the right to cross-examine "as to make a critical difference in the application of the Confrontation Clause." ***Green***, 399 U.S. at 168.  If I were not bound to follow ***Rockette***, I would conclude that this is such a case.

---

[3] Other state courts have recognized the confrontation problems associated with procedures similar to the one set forth in WIS. STAT. § 908.08.  *See* ***State v. Apilando***, 900 P.2d 135 (Haw. 1995), *as amended* (Aug. 31, 1995) (state statute authorizing admission of child sexual abuse victim's videotaped statement violated the defendant's right of confrontation); ***People v. Bastien***, 129 Ill.2d 64, 541 N.E.2d 670 (1989) (same); ***State v. Pilkey***, 776 S.W.2d 943 (Tenn. 1989) (same); *see also* ***Briggs v. State***, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990) (similar state statute may be constitutional as applied to a defendant who has a "full and fair opportunity" to cross-examine the child witness).

3