STATE of Wisconsin, Plaintiff-Respondent,

v.

Xavier J. ROCKETTE, Defendant-Appellant.†

Court of Appeals

*No. 2004AP2732–CR. Submitted on briefs April 20, 2006.
Decided May 31, 2006.*

2006 WI App 103

(Also reported in 718 N.W.2d 269.)

† Petition to review denied 8-30-06.

611

612

613

616

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Tim Provis*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James M. Freimuth*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Brown, Nettesheim and Anderson, JJ.

¶ 1. ANDERSON, J. Xavier J. Rockette appeals from a judgment convicting him of two felonies as party to a crime, first-degree intentional homicide while in possession of a dangerous weapon and possession of a firearm by a felon, and from an order denying his postconviction motion. Rockette challenges the judgment and order of the trial court on four grounds.

¶ 2. First, he mounts a Confrontation Clause challenge, under the authority of *Crawford v. Washington*, 541 U.S. 36 (2004), to the testimony of Lonnie Grandberry. Second, Rockette claims the prosecutor improperly vouched for Grandberry's credibility during closing arguments. Third, Rockette argues that the court abridged his constitutional right to present a defense by excluding evidence that Grandberry allegedly lied to police in unrelated cases in attempts to obtain more favorable sentencing in his own criminal matters. Finally, Rockette claims that the State withheld information from him bearing upon Grandberry's credibility in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

¶ 3. We reject Rockette's four challenges and affirm the judgment and order of the trial court. First,

Grandberry's claimed inability to remember earlier testimonial statements did not implicate the requirements of the Confrontation Clause under *Crawford* because he was present at trial, took an oath to testify truthfully and answered the questions put to him during cross-examination. Second, we conclude that Rockette waived his objections to the prosecutor's statements during closing arguments by failing to make a timely motion for a mistrial. Third, we hold that the trial court did not err in excluding the evidence tending to show that Grandberry had lied to police on other occasions. Finally, we hold that even if the State improperly suppressed evidence favorable to Rockette, the undisclosed evidence does not undermine our confidence in the jury's verdict and therefore no *Brady* violation occurred.

## FACTS

¶ 4. On July 9, 2002, the State filed a complaint against Rockette, charging him with participation in the September 2000 shooting death of Jahmal Furet. The jury trial began on October 6, 2003.

### Grandberry's Testimony

¶ 5. Grandberry testified in the State's case-in-chief on the second and third days of trial. On direct examination, Grandberry acknowledged that he had eight times been convicted of a crime and, at the time of the trial, was serving a prison sentence following probation revocation for his delivery of cocaine conviction. Grandberry admitted previously testifying in the Rockette case, but that he had "memory difficulties when [he] testified previously." Grandberry indicated that he had been taking medication, had experienced hallucinations and had trouble sleeping.

¶ 6. When the prosecutor asked Grandberry if he remembered initiating an interview with police investigators in September 2001 concerning the Furet homicide, Grandberry replied, "I don't know," and "I don't remember." The prosecutor, apparently intending to refresh Grandberry's recollection with the police report of an interview, began asking Grandberry whether he recalled making specific statements to the police and Grandberry again replied that he did not remember. The court then declared Grandberry a hostile witness and permitted the prosecutor to ask leading and suggestive questions.

¶ 7. The prosecutor proceeded to ask Grandberry whether he made certain statements to the officers based upon reports from two interviews. Each time the prosecutor questioned Grandberry about statements he made to police, which inculpated Rockette, he replied that he did not remember. Specifically, when asked if he remembered telling the investigator that "Xavier Rockette fired approximately four or five shots" at Furet, Grandberry replied, "I don't know, I don't remember nothing." The prosecutor also asked Grandberry whether he remembered the sentencing judge in one of his criminal cases having been informed that he had cooperated with the police. Grandberry again stated that he did not understand or did not remember.

¶ 8. The prosecutor then inquired whether Grandberry recalled testifying at a preliminary hearing in the Rockette case. This time Grandberry responded that he did not remember. The prosecutor proceeded to read from the transcript specific questions posed to Grandberry at the hearing and then to ask Grandberry whether he recalled the answers he had provided at the hearing. True to form, Grandberry repeatedly replied that he did not remember. The prosecutor followed the

same procedure with regard to Grandberry's cross-examination testimony at the preliminary hearing.

¶ 9. At this point, Rockette objected on Confrontation Clause grounds. The trial court overruled the objection, commenting that Rockette would have the opportunity to confront Grandberry about his answers. The court stated that Grandberry "is in fact having selective memory loss, he is trying to avoid his prior statements."

¶ 10. When questioned, Grandberry denied sending a letter to the prosecutor dated February 5, 2002, although he conceded on cross-examination that his signature might have been at the end of the letter. The prosecutor offered the letter into evidence and then read it aloud. The letter stated that Grandberry had witnessed Rockette shoot Furet four to five times, and he had not come forward with this information because he was concerned for his safety and the safety of his family. Grandberry admitted having a fellow inmate write an April 2003 letter to the prosecutor indicating that Grandberry wanted his freedom, he no longer wanted to testify and that the prosecutor would be "very upset" if he did not get his freedom.

¶ 11. Rockette's counsel then cross-examined Grandberry. When asked about his mental problems, Grandberry responded that he was having problems with hallucinations. When Rockette's counsel asked him whether he was refusing to testify before the jury "because you don't want to admit that you gave false information to the court and law enforcement," Grandberry responded that he did not know. He did, however, admit that he knew that if he gave false information to a police officer or testified falsely while on the witness stand he could get into trouble. Grandberry also answered "I don't know" when asked if the reason he

lacked memory of the Furet homicide was because he was not there. Grandberry testified that he did not know if he asked "for a break" in his own criminal matters in exchange for providing information on Furet's homicide.

¶ 12. Rockette's counsel then inquired about several letters received or sent by Grandberry. Grandberry acknowledged receiving a letter from the prosecutor dated April 19, 2003, in which the prosecutor accused him of "attempting to extort a sentence modification from the State." Grandberry also admitted sending a letter to Rockette in which he stated in part:

> I feel real bad cause I didn't want to do that to you. I don't know why I did that, but whatever you do, do it all the way. Don't take no deal because the case is weak . . . . Tell your lawyer to call me or to see me. I'm going to make sure that you come home to your family.

¶ 13. Grandberry also testified that he sent a letter to Rockette's defense counsel on April 6, 2003, in which he wrote: "I need you to call me. I would like to help you win the case because they play me. You know, I should be free by now. So please call me." When asked what he meant by wanting to help Rockette's counsel "win the case," he stated, "[A] lot of witness[es] have wrong information."

¶ 14. Rockette's counsel also asked Grandberry about statements made at Grandberry's sentencing hearing concerning "how much assistance you had given the State in Jahmal Furet's homicide" and that in return he wanted a lesser sentence. Grandberry stated he did not know about it. Rockette's counsel also asked him about Deontae Westmoreland. Rockette's counsel asked him if he remembered "telling investigators . . .

that Mr. Westmoreland was involved in a robbery where a fella was shot in the neck." Grandberry replied that he did not.

¶ 15. Rockette's counsel later sought to show, through cross-examination of Detective William Warmington of the City of Racine Police Department and other extrinsic evidence, that Grandberry had lied to police about Westmoreland in an effort to curry favor in his own criminal matters. Rockette argued that Warmington's testimony about this situation was admissible to show Grandberry's motive and plan to provide the authorities with false information to obtain more favorable sentencing. Rockette later expanded his argument to include a Tremayne Vaughn situation, which according to Rockette's counsel was "also found to be false." The trial court denied Rockette's request, concluding that it constituted an impermissible attempt to impeach Grandberry by extrinsic evidence on collateral matters. The court also explained that Rockette's request should have been brought as an other acts motion prior to trial and, because it was not, it constituted a violation of the court's pretrial order.

### Closing Arguments

¶ 16. During closing arguments, the prosecutor commented: "The other thing I'm asking you to consider is does it make sense that the State of Wisconsin, the District Attorney's office, is handing out consideration willy[-]nilly without any regard for the truthfulness of the statements that are being provided?" At this point, Rockette's counsel objected and, after an off-the-record conversation with the judge, the prosecutor stated, "As I said, ladies and gentlemen, it's up to you to assess the credibility of each witness. It's not my job." The trial court later gave the following

instruction: "Ladies and gentlemen of the jury, the fact that the State investigated the statements of certain witnesses before they were called in this case should not affect your analysis of their credibility." Rockette did not move for a mistrial. Following deliberations, the jury found Rockette guilty.

### Postconviction Motion

¶ 17. On June 10, 2005, Rockette filed a postconviction motion in which he alleged that the State withheld material impeachment evidence from him in violation of his due process rights as articulated in *Brady*.[1] Rockette alleged that the State wrongly withheld police reports showing that Grandberry began attempting to implicate him in the murder of Tremayne Vaughn as early as August 31, 2002, and that by March 31, 2003, the police had concluded some of Grandberry's statements in this regard were untrue. The trial court denied the motion. The court explained that the impact of "non-disclosure of the police reports, while not meaningless, is de minimis upon the evidence and testimony at trial."

## DISCUSSION

### Confrontation Clause Violation

¶ 18. Rockette complains that his Sixth Amendment rights were violated when the prosecutor asked Grandberry the series of questions about the substance

---

[1] After the parties had already filed their principal appellate briefs, Rockette moved for remand to pursue a postconviction motion alleging the constitutional violation. The State did not oppose the motion. By order dated April 28, 2005, this court granted the motion and remanded the case back to the trial court for the purpose of deciding the postconviction motion.

623

of his prior testimonial statements, each of which he refused to answer based on claimed memory loss. According to Rockette, because Grandberry claimed memory loss, he could not be cross-examined on the veracity of the statements imputed to, but not admitted by, him. The State contends that Grandberry was present at trial, took an oath to testify truthfully and answered the questions presented to him by Rockette's counsel, and thus, the Confrontation Clause does not place a restriction on the use of the statements. We agree with the State.

¶ 19. The question of whether a defendant's right to confrontation has been violated is one of constitutional fact, subject to independent appellate review. *State v. Stuart*, 2003 WI 73, ¶ 21, 262 Wis. 2d 620, 664 N.W.2d 82. "We will 'adopt the circuit court's findings of historical fact, unless they are clearly erroneous, but we independently apply those facts to the constitutional standard.' " *Id.* (citation omitted).

¶ 20. The Confrontation Clause of the Sixth Amendment involves the right of a defendant to confront the witnesses against him or her. *Delaware v. Fensterer*, 474 U.S. 15, 18 (1985) (per curiam). Recently, in *Crawford*, 541 U.S. at 59 n.9, the United States Supreme Court affirmed the principle that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his [or her] prior testimonial statements."[2] This affirmation is important because if Grandberry is

---

[2] *Crawford v. Washington*, 541 U.S. 36 (2004), put the brakes on nearly a quarter century of Confrontation Clause jurisprudence, as defined by *Ohio v. Roberts*, 448 U.S. 56 (1980). *See State v. Savanh*, 2005 WI App 245, ¶¶ 18–19, 287 Wis. 2d 876, 707 N.W.2d 549. Under *Roberts*, an unavailable witness's

deemed to have appeared for cross-examination at Rockette's trial, the use of his statements does not implicate Rockette's rights under the Confrontation Clause.

¶ 21. The *Crawford* court did not explain what it means for a declarant to "appear[] for cross-examination." However, two earlier United States Supreme Court decisions addressed and resolved this issue.

¶ 22. In *Fensterer*, the Supreme Court held that the Confrontation Clause does not require exclusion of

statement against a criminal defendant was admissible if the statement bore "adequate indicia of reliability," a test met when the evidence either came within a "firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness." *Roberts*, 448 U.S. at 66. The *Crawford* Court expressed the concern that Roberts had fostered an overemphasis on reliability that oftentimes bore little relation to the abuses the Confrontation Clause targeted. *Crawford*, 541 U.S. at 51. Accordingly, *Crawford* reoriented the focus of Confrontation Clause claims from reliability back to confrontation.

The focus now is on the "testimonial" or "nontestimonial" nature of the out-of-court statements: "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 68–69. Regardless of their reliability, therefore, out-of-court testimonial statements are barred under the Confrontation Clause unless (1) the witness is unavailable and (2) the defendant had a prior opportunity to cross-examine the witness. *Id.* at 68. Here, Grandberry's prior formal statements to the police and his preliminary hearing testimony are testimonial in nature. *See id.* at 51–52, 68 (testimonial statements include "testimony at a preliminary hearing," "custodial examinations . . . or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial").

expert opinion testimony when the expert is unable to recall the basis for his opinion. *Fensterer*, 474 U.S. at 18. The Court wrote: "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* at 20. The Confrontation Clause does not guarantee that a witness's testimony will not be "marred by forgetfulness, confusion, or evasion." *Id.* at 21–22.

¶ 23. In *United States v. Owens*, 484 U.S. 554, 556 (1988), a witness who had given a prior identification of an individual was not able to recall, due to memory loss, making that prior identification when called at trial. The defendant argued that the memory loss suffered by the declarant precluded him from being cross-examined. *See id.* at 556–57. The Supreme Court held that those circumstances do not present Confrontation Clause problems. *Id.* at 559–60. "[T]he traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness's demeanor satisfy the constitutional requirements." *Id.* at 560.

> It is sufficient that the defendant has the opportunity to bring out such matters as the witness's bias, his [or her] lack of care and attentiveness, his [or her] poor eyesight, and even (what is often a prime-objective of cross examination) the very fact that he [or she] has a bad memory . . . . [T]he ability to inquire into these matters suffices to establish the constitutionally requisite opportunity for cross-examination . . . [even] when the witness's past belief is introduced and he [or she] is unable to recollect the reason for that past belief.

*Id.* at 559 (citation omitted).

¶ 24. *Fensterer* and *Owens* teach us that the key inquiry for Confrontation Clause purposes is whether the declarant is present at trial for cross-examination, takes the oath to testify truthfully and answers questions asked of him or her by defense counsel. These cases also plainly inform us that the Confrontation Clause does not guarantee that the declarant's answers to those questions will not be tainted by claimed memory loss, real or feigned.

¶ 25. Rockette claims that the *Crawford* court altered this analysis where prior testimonial statements are concerned. However, we can find nothing in the *Crawford* opinion suggesting that the Court intended to overrule or otherwise call into question *Fensterer* or *Owens*.

¶ 26. Other jurisdictions that have had the opportunity to interpret what it means to "appear for cross-examination" under *Crawford* have concluded that a refusal or inability by the witness to recall the events recorded in a prior statement does not render the witness unavailable for purposes of cross-examination. *State v. Pierre*, 890 A.2d 474, 500–02 (Conn. 2006), *cert. denied*, __ U.S. __ (U.S. Conn. June 12, 2006) (No. 05–10733) (compiling cases from other jurisdictions); *People v. Sharp*, 825 N.E.2d 706, 711–12 (Ill. Ct. App. 2005); *Mercer v. United States*, 864 A.2d 110, 114 n.4 (D.C. 2004), *cert. denied*, 543 U.S. 1188 (2005). Accordingly, we hold that a witness's claimed inability to remember earlier statements or the events surrounding those statements does not implicate the requirements of the Confrontation Clause under *Crawford*, so long as the witness is present at trial, takes an oath to testify truthfully, and answers the questions put to him or her

during cross-examination. *See Fensterer*, 474 U.S. at 20, 22; *Owens*, 484 U.S. at 559–60.

¶ 27. Here, we conclude that despite Grandberry's purported memory loss, he appeared at trial, thus removing any issue under the Confrontation Clause. In contrast to cases where the witness either invokes a Fifth Amendment privilege and remains silent during his or her testimony or refuses to be sworn in or testify at all, *see Douglas v. Alabama*, 380 U.S. 415, 416 (1965), and *Robinson v. State*, 102 Wis. 2d 343, 352–53, 306 N.W.2d 668 (1981), Grandberry took the stand at trial, agreed to testify truthfully and answered the questions posed by Rockette's counsel. Rockette's counsel was therefore able to test Grandberry's recollection, motive and interest and hold his testimony up to the jury so that the jury could decide whether it was worthy of belief. *See Douglas*, 380 U.S. at 419. Indeed, Grandberry's concessions on cross-examination clearly call into question his credibility. Rockette's counsel even elicited testimony from Grandberry demonstrating that he had at one point offered his assistance to the State and then later offered to help Rockette "win the case." We reject Rockette's Confrontation Clause challenge.

*Prosecutor's Closing Statements*

¶ 28. Rockette claims that the prosecutor improperly vouched for Grandberry's credibility when she said that the State does not willy-nilly hand out consideration to a witness without regard for the truthfulness of the witness's statement. A defendant's failure to move for a mistrial before the jury returns its judgment constitutes a waiver of his or her objections to the

prosecutor's statements during closing arguments. *State v. Davidson*, 2000 WI 91, ¶ 86, 236 Wis. 2d 537, 613 N.W.2d 606. If the defendant had not intended to waive his or her complaints there existed ample opportunity to place a motion for mistrial on the record, before or after the court charged the jury; failure to do so constitutes a waiver of those complaints. *See id.* Rockette waived his objections to the prosecutor's statement by failing to make a timely motion for mistrial.

¶ 29. It is true that certain errors are so plain or fundamental that they cannot be waived. *Id.*, ¶ 88. When a defendant alleges that a prosecutor's statements constituted misconduct, the test we apply is whether the statements "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (citation omitted).

¶ 30. The prosecutor's statements in this case were not so egregious as to constitute plain error. The prosecutor's comments were limited in scope and, following objections, the prosecutor reminded the jurors that they, and not she, were the arbiters of witness credibility. The court also issued a curative instruction to the jury. Rockette made no motion for mistrial after the court addressed the objections. All we can assume is that Rockette was satisfied with the court's ruling and curative measure, and that he had no further objections. *See id.* Rockette took his chances with the jury. *See id.* We find no plain error and decline to grant a new trial on that basis.

### Exclusion of Evidence

¶ 31. Rockette argues that the trial court erred in excluding evidence that in two unrelated matters—the

Westmoreland and Vaughn situations—Grandberry allegedly lied to police in an effort to obtain a lesser sentence in his own criminal matters. On appeal, Rockette does not challenge the trial court's evidentiary ruling; rather, he asserts that the strict application of the rules of evidence in this case impermissibly restricted his constitutional right to present a defense.

¶ 32. A criminal defendant's due process right includes "the right to a fair opportunity to defend against the State's accusations." *State v. Evans*, 187 Wis. 2d 66, 82, 522 N.W.2d 554 (Ct. App. 1994) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973)). "The right to present evidence is rooted in the Confrontation and Compulsory Process Clauses of the United States and Wisconsin Constitutions." *Evans*, 187 Wis. 2d at 82–83. The trial court may not "deny the defendant a fair trial or the right to present a defense by a mechanistic application of rules of evidence." *State v. DeSantis*, 155 Wis. 2d 774, 793, 456 N.W.2d 600 (1990) (citing *Davis v. Alaska*, 415 U.S. 308 (1974)).

¶ 33. However, the rights to confront witnesses and to defend are not absolute and may bow to accommodate other legitimate interests in the criminal trial process. *DeSantis*, 155 Wis. 2d at 793 (citing *Chambers*, 410 U.S. at 295). Evidence of little importance, whether merely cumulative or of little probative value, will almost never outweigh the State interest in efficient judicial process. *Perry v. Rushen*, 713 F.2d 1447, 1453 (9th Cir. 1983). Whether a defendant's right to present a defense has been improperly denied by the trial court is a question of constitutional fact which we decide de novo. *State v. Heft*, 185 Wis. 2d 288, 296, 517 N.W.2d 494 (1994).

¶ 34. We conclude that Rockette's ability to present his defense to the jury was not adversely affected by the trial court's evidentiary ruling. Rockette's defense did not hinge on the excluded evidence. Rather, contrary to Rockette's arguments, the excluded evidence was cumulative to the other evidence before the jury that called into question Grandberry's credibility as a witness for the State.

¶ 35. Grandberry's testimony already suggested that he had a motive for providing false information to the police in the present case and for claiming memory loss while on the stand. From the prosecutor's questions, the jury learned that Grandberry had eight prior criminal convictions and, at the time, was serving a prison sentence. The jury knew both that the State had received a letter, which Grandberry admitted might have had his signature on it, stating that Grandberry witnessed Rockette shoot Furet four to five times and that Grandberry later wrote the State a letter demanding "his freedom."

¶ 36. Then, on cross examination, Grandberry acknowledged receiving a letter from the State accusing him of attempting to extort a lesser sentence and sending letters to Rockette and his counsel indicating that the State had "play[ed]" him and he could be of assistance to the defense. Grandberry recognized that if he testified falsely in this case, he could get into further trouble. Also, Grandberry offered testimony inconsistent with other portions of his own testimony and with the testimony of other witnesses concerning the circumstances of the homicide. Rockette cannot reasonably argue that the additional evidence showing that Grandberry had provided false information to the police in *two other cases* would have altered the jury's assess-

631

ment of whether Grandberry had provided false information in *this case*. The issue was fully tried without it.

¶ 37. We also note that, had the trial court permitted Rockette to introduce the impeachment evidence, the State would have introduced evidence that would have bolstered Grandberry's credibility by showing that he had provided accurate information to authorities in other circumstances. Thus, the exclusion of the additional impeachment evidence was necessary to avoid a mini-trial on an issue clearly collateral to Rockette's guilt. The trial court, therefore, did not deprive Rockette of his fundamental right to present a defense when it excluded the additional impeachment evidence.

## *Brady Violation*

¶ 38. Rockette claims the State wrongly withheld information bearing upon the credibility of Grandberry and in so doing violated his due process rights under *Brady*. He maintains the State failed to timely disclose to him Racine County Sheriff's Department documents that suggest Grandberry had given authorities false information—or at least questionable information—implicating Rockette in the Vaughn homicide.

¶ 39. In *Brady*, the Supreme Court held, "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The prosecution's duty to disclose evidence favorable to the accused includes the duty to disclose impeachment evidence as well as exculpatory evidence. *Strickler v. Greene*, 527 U.S. 263,

280 (1999). To establish a *Brady* violation, the defendant must show that the State suppressed the evidence in question, that the evidence was favorable to the defendant and that the evidence was "material" to the determination of the defendant's guilt or punishment. *Strickler*, 527 U.S. at 281–82. On appeal, this court independently applies this constitutional standard to the undisputed facts of the case. *See State v. DelReal*, 225 Wis. 2d 565, 571, 593 N.W.2d 461 (Ct. App. 1999).

¶ 40. In this case, taking the allegation that the State suppressed impeachment evidence concerning Grandberry's history of providing false information to police as true, this evidence is not material under *Brady*. Evidence is material for *Brady* purposes only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *State v. Harris*, 2004 WI 64, ¶ 14, 272 Wis. 2d 80, 680 N.W.2d 737. A reasonable probability of a different result is shown when the government's evidentiary suppression undermines confidence in the outcome of the trial. *See Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

¶ 41. Evidence of impeachment is material if the witness whose testimony is attacked "supplied the only evidence linking the defendant(s) to the crime," *United States v. Petrillo*, 821 F.2d 85, 90 (2d Cir. 1987), or "where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case." *United States v. Payne*, 63 F.3d 1200, 1210 (2d Cir. 1995). Impeachment evidence is *not* material, and thus a new trial is *not* required "when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose

633

credibility has already been shown to be questionable." *Id.* In sum, "Generally, where impeachment evidence is merely cumulative and thereby has no reasonable probability of affecting the result of trial, it does not violate the *Brady* requirement." *United States v. Dweck*, 913 F.2d 365, 371 (7th Cir. 1990); *see also United States v. Fallon*, 348 F.3d 248, 252 (7th Cir. 2003) (finding no *Brady* violation in part because the additional evidence would have been merely cumulative and therefore not material).

¶ 42. The evidence allegedly withheld was merely cumulative of other evidence presented at trial that challenged Grandberry's credibility and would not have placed his testimony in a different light. Even without the evidence, the record shows Grandberry as an incredible, recalcitrant and unreliable witness for both the State and the defense. As we have already explained, Grandberry's testimony suggested that he had a motive for providing false information to the police in the present case and for claiming memory loss while on the stand. He also admitted sending and receiving letters showing that he had information beneficial to the State on the one hand and to Rockette on the other. Further, he contradicted himself while testifying. For example, at one point, Grandberry admitted testifying previously in this case, but then later claimed he did not remember doing so.

¶ 43. In addition, Grandberry's testimony certainly did not supply the only evidence linking Rockette to the murder, *see Petrillo*, 821 F.2d at 90, and the excluded evidence would not have impacted Grandberry's credibility in such a way as to undermine a critical element of the State's case, *see Payne*, 63 F.3d at 1210. The jury had before it other evidence implicating Rockette in the Furet murder. The jury heard

634

testimony establishing that (1) Rockette was driving or riding in a vehicle that had been identified as the vehicle involved in the homicide; (2) shortly before the homicide, Rockette was carrying a semiautomatic handgun that looked like the gun linked to the homicide and later found at the residence of Rockette's good friend; (3) Rockette had a possible motive for participating in the shooting; and (4) Rockette allegedly admitted participating in shooting Furet to a fellow inmate. Because the withheld impeachment evidence was merely cumulative, it does not undermine our confidence in the verdict and Rockette's challenge premised upon a purported *Brady* violation must fail.[3]

## CONCLUSION

¶ 44. In sum, we reject all four of Rockette's challenges. First, because Grandberry appeared at trial for purposes of *Crawford*, his claimed inability to remember his prior testimonial statements did not implicate the requirements of the Confrontation Clause. Second, Rockette waived his objections to the prosecutor's closing statements. Third, the exclusion of the evidence concern-

---

[3] Rockette likens this case to *Benn v. Lambert*, 283 F.3d 1040, 1055–57 (9th Cir. 2002), in which the court held that the withholding of information about the prosecution's key witness's false allegation about the accused's participation in another murder was sufficient to violate *Brady v. Maryland*, 373 U.S. 83 (1963). However, in *Benn*, the impeachment evidence that was before the jury on the prosecutor's key witness was trivial and did not show the witness to be a liar at all, let alone about the accused. *See Benn*, 283 F.3d at 1057 ("The jury, however, never heard that [the witness] had lied about anything."). By contrast, as we have explained, the impeachment evidence before the jury in this case was substantial and showed Grandberry to be an untruthful witness on matters pertinent to this case.

ing the Westmoreland and Vaughn situations did not violate Rockette's fundamental right to present a defense. Finally, any withheld evidence concerning the Vaughn situation was not material and therefore no *Brady* violation occurred. We affirm the judgment and order.

*By the Court.*—Judgment and order affirmed.