COURT OF APPEALS
DECISION
DATED AND FILED

February 9, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1278-CR**

Cir. Ct. No. 2016CF3733

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

LYLE CLARK,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MARK A. SANDERS, Judge. *Affirmed*.

Before Dugan, Donald and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Lyle Clark appeals from the judgment of conviction and the order denying his motion for postconviction relief following his conviction for first-degree sexual assault of a child less than thirteen years of age. Underlying all of Clark's arguments for a new trial is his contention that his right to confrontation was violated when he was unable to meaningfully cross-examine his accuser, M.H., who also happens to be his step-grandson.

¶2    We conclude that Clark is not entitled to a new trial and that the trial court properly denied Clark's motion. Clark forfeited his ability to have his right to confrontation argument addressed directly because his trial counsel failed to object to M.H.'s testimony at trial. Clark is likewise not entitled to a new trial on the basis of plain error, ineffective assistance of counsel, or in the interest of justice because Clark's right to confrontation was not violated by M.H.'s live testimony or the admission of the recordings of M.H.'s forensic interviews. We, therefore, affirm the judgment of conviction and the trial court's order denying Clark's postconviction motion.

## BACKGROUND

¶3    On July 21, 2016, M.H., who was four years old at the time, was playing with his younger brother, who was one year old, when M.H.'s father noticed M.H. with his pants down and instructing his younger brother to touch or kiss his penis. When M.H.'s father asked M.H. where he learned that behavior, M.H. started crying and said he learned it from Grandpa, which was what M.H. called Clark.

¶4    M.H.'s parents took M.H. to the doctor and reported Clark to the police. Karla Lehmann, a child forensic interviewer at Children's Hospital of Wisconsin, interviewed M.H. to follow up on the report. The first interview took

place on July 28, 2016, at which time M.H. indicated that Clark asked him to keep secrets, had told him to stick out his "pee pee," and took pictures of it. When M.H. asked if he could talk to Lehmann again, his parents scheduled a second interview for August 12, 2016. During the second interview, M.H. revealed alarming information about Clark's conduct with M.H. and his younger brother. According to M.H., Clark told M.H. to stick out his "pee pee" and have his younger brother suck on it. M.H. also indicated that Clark told him to urinate in his younger brother's mouth and that Clark took pictures of him and his younger brother doing this.[1] M.H. also said that he had urinated in the living room at Clark's direction. M.H. asked to see Lehmann a third time, and M.H.'s parents scheduled another interview that took place on August 18, 2016. At this interview, M.H. described how he cleaned his house and that he washed out the tub with Clark's "pee pee" and that he had sucked on Clark's penis and butt, among other body parts. M.H. said that Clark peed in his mouth and he swallowed it and described Clark's pee as white in color.

¶5    Clark was arrested following this third interview and charged on August 23, 2016, with first-degree sexual assault of a child. Clark waived his right to a jury trial, and the case was tried to the court over the course of four days in March and April 2018.

¶6    The State presented testimony from M.H.'s parents, Lehmann, and the detective who arrested Clark. The State also introduced the recordings of M.H.'s forensic interviews, and M.H., who was six years old at the time of the

---

[1] Further investigation, including a search of Clark's electronic devices such as his phone, did not reveal any pictures depicting the events described by M.H.

3

trial, testified. When M.H. took the stand, he was able to respond to questions indicating his understanding between truth and lies, but his responses to questions on both direct and cross-examination that were aimed at eliciting information about the abuse largely consisted of "I don't remember," "I don't know," and "I don't really know." The trial court later described M.H.'s testimony by saying, "The experience of testifying in court and the subject upon which [M.H.] was testifying was clearly quite difficult for him." The trial court further stated that "[i]t was clear that [M.H.] was afraid and emotional on the stand."

¶7      In his defense, Clark presented testimony from his wife—M.H.'s paternal grandmother—and an expert witness on forensic interviews. Clark also testified in his own defense. Clark's theory of defense was that M.H.'s parents coached M.H. to falsely accuse Clark of abuse, after Clark and his wife (the Clarks) informed M.H.'s parents that their house would be sold if they did not pay the rent that they owed.[2]

¶8      After receiving the evidence and hearing the testimony, the court found Clark guilty. In making a record of its decision, the trial court found that M.H.'s live testimony "was not enormously useful" because M.H. "was simply unable to discuss the things that the parties wished him to discuss," and the trial court continued by noting that M.H.'s testimony was "neither helpful to the State nor the [d]efense." In assessing Clark's testimony, the trial court found that

---

[2] M.H.'s parents rented the house that they lived in from the Clarks. While the trial court, for lack of evidence, ultimately placed no emphasis on any potential dispute between M.H.'s parents and the Clarks over any debt M.H.'s parents owed the Clarks, there was testimony from both M.H.'s parents and the Clarks regarding the many disputes that arose between M.H.'s parents and the Clarks in relation to the house that M.H.'s parents rented from the Clarks. The Clarks testified that the latest dispute centered on the Clarks' decision to sell the house if the rent and utilities were not brought current.

Clark's testimony "in many respects seems credible." Thus, the trial court stated that "[t]he critical component of the evidence is whether [M.H.] is credible during his forensic interviews" and "what this really boils down to is … [does the court] believe what [M.H.] said with respect to [Clark] during his forensic interviews."

¶9    On balance, the trial court found that M.H.'s statements of the abuse he suffered while in Clark's care were "sufficiently credible that it erase[d] in [the court's] mind any reasonable doubt that [the court] might have had." The trial court noted that it found M.H.'s statements credible because of "the concrete detail that [M.H.] would not have otherwise had," which the trial court described as detailed "information [M.H.] would not have had but for having experienced it." The trial court additionally noted that Clark had an "unusual reaction" to the accusations, and that Clark had "unusual behavior" at the time of his arrest.[3] The court found Clark guilty and, subsequently, sentenced Clark to twenty-seven years of imprisonment, composed of seventeen years of initial confinement and ten years of extended supervision.

¶10    Clark filed a motion for postconviction relief and argued that he was entitled to a new trial based on a violation of his right to confront M.H. He argued that the trial court could directly address his confrontation violation despite his trial counsel's lack of objection to M.H.'s testimony or, in the alternative, Clark

---

[3] Clark reacted to the initial news of allegations of abuse by going to the police station to refute the allegations instead of confronting M.H.'s parents. Then, when Clark was arrested, he refused to follow the police officer's directions to put his car in park. He also ignored directions from police to exit his vehicle. The police were forced to shut down the street and call for additional squad cars. Clark explained that he ignored orders to exit his vehicle because he called his wife "to let her know [in] case she was wondering where [he] was at" and he called his employer to "explain what was happening." When Clark finally exited his vehicle, he uttered a statement to the effect of "my life is over; why don't you just shoot me."

argued that the trial court could use either the doctrine of plain error or ineffective assistance of counsel to grant him a new trial. The trial court denied the motion finding that Clark was not denied his right to confrontation, and this appeal followed.

## DISCUSSION

¶11 Clark renews his argument on appeal that he is entitled to a new trial because he was deprived of his opportunity to meaningfully cross-examine M.H. in violation of his right to confront his accuser because M.H.'s live testimony was "like questioning an empty chair" and neither he nor his attorney were present at M.H.'s forensic interviews that were admitted at the trial and were used to convict him. Clark argues that we have several options to "right this wrong." As explained further below, we disagree.

### I. Clark forfeited his ability to bring a direct claim for a violation of his right to confrontation

¶12 Clark first argues that we can directly address the alleged violation of his right to confrontation; however, as Clark concedes in his brief, trial counsel failed to object to the admission of the forensic interviews or M.H.'s live testimony. "[U]nobjected-to errors are generally considered waived; and the rule applies to both evidentiary and constitutional errors." *State v. Boshcka*, 178 Wis. 2d 628, 642, 496 N.W.2d 627 (Ct. App. 1992).[4] "[W]e may, in our discretion

---

[4] In *State v. Ndina*, our supreme court clarified the distinction between the terms "forfeiture" and "waiver." *See id.*, 2009 WI 21, ¶¶28-32, 315 Wis. 2d 653, 761 N.W.2d 612. "Although cases sometimes use the words 'forfeiture' and 'waiver' interchangeably, the two words embody very different legal concepts. 'Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.'" *Id.*, ¶29 (citation omitted). Forfeiture is the appropriate term to use in reference to trial counsel's failure to object in this instance.

and if necessary to see that justice is done, consider such claims[.]" *Id.* at 643. However, we conclude that there is no compelling reason for us to overlook trial counsel's failure to object and address Clark's claim directly. Clark had ample time during the proceedings to object to the introduction of the recorded forensic interview and M.H.'s live testimony, yet did not do so. He "should not now be heard to complain [of] his own acquiescence." *See id.* However, as a part of resolving Clark's additional arguments, we discuss below whether Clark's right to confrontation was violated.

## II. Clark is not entitled to a new trial based on plain error

¶13 Clark next argues that he is entitled to a new trial because the violation of his right to confrontation here rises to the level of plain error. We disagree. Clark's right to confrontation was not violated and, therefore, the doctrine of plain error does not apply.

¶14 In *State v. Jorgensen*, 2008 WI 60, 310 Wis. 2d 138, 754 N.W.2d 77, our supreme court explained:

> The plain error doctrine allows appellate courts to review errors that were otherwise waived by a party's failure to object. Plain error is "'error so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time.'" The error, however, must be "obvious and substantial." Courts should use the plain error doctrine sparingly.

*Id.*, ¶21 (citations omitted). Thus, as a threshold requirement, invoking the plain error doctrine requires that an error exist. However, as discussed below, Clark had the opportunity to cross-examine M.H. when he appeared in court, and that is all that is required to satisfy his right to confrontation. Therefore, there is no error, much less a plain one.

¶15    "The Confrontation Clause of the Sixth Amendment involves the right of a defendant to confront the witnesses against him or her." ***State v. Rockette***, 2006 WI App 103, ¶20, 294 Wis. 2d 611, 718 N.W.2d 269.  The same protection is afforded by article I, section 7 of the Wisconsin Constitution.  *See* WIS. CONST. art. I, § 7.  "The question of whether a defendant's right to confrontation has been violated is one of constitutional fact, subject to independent appellate review." ***Rockette***, 294 Wis. 2d 611, ¶19.  We accept the trial court's findings of historical fact unless they are clearly erroneous and independently review whether those facts amount to a violation of the right to confrontation. ***Id.*** (quoting ***State v. Stuart***, 2003 WI 73, ¶21, 262 Wis. 2d 620, 664 N.W.2d 82).

¶16    "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his [or her] prior testimonial statements." ***Crawford v. Washington***, 541 U.S. 36, 59 n.9 (2004).  "Ordinarily a witness is regarded as 'subject to cross-examination' when he [or she] is placed on the stand, under oath, and responds willingly to questions." ***United States v. Owens***, 484 U.S. 554, 561 (1988).  "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." ***Delaware v. Fensterer***, 474 U.S. 15, 20 (1985).

¶17    The issue here, as Clark argues, is whether M.H. can be considered to have been subject to cross-examination when his testimony largely consisted of "I don't remember," "I don't know," and "I don't really know."  If he was not,

Clark contends that he is entitled to a new trial because his right to confrontation was violated by the admission of M.H.'s previously recorded forensic interviews.[5]

¶18 As this court has previously explained, a witness's "claimed inability to remember earlier testimonial statements did not implicate the requirements of the Confrontation Clause under *Crawford* because [the witness] was present at trial, took an oath to testify truthfully and answered the questions put to him during cross-examination." *Rockette*, 294 Wis. 2d 611, ¶3. That is, "the key inquiry for Confrontation Clause purposes is whether the declarant is present at trial for cross-examination, takes the oath to testify truthfully and answers questions asked of him or her by defense counsel." *Id.*, ¶24. Thus, when a witness's testimony aimed at exploring previous testimonial statements largely consisted of responses such as "I don't know" and "I don't remember," we concluded that there was no violation of the defendant's right to confrontation; the witness was physically present at trial for cross-examination, took the oath to testify truthfully, and answered the questions asked of him. *Id.*, ¶27.

¶19 Applying *Rockette* here, as we must, we conclude that there is no violation and, therefore, no error that warrants a new trial, pursuant to the doctrine of plain error. M.H. was present at trial; he took an oath to testify truthfully; he provided testimony indicating that he understood the difference between a truth

---

[5] Clark does not argue that the trial court, at the start of the trial, misapplied WIS. STAT. § 908.08 (2017-18), when it addressed the use of the recordings of the forensic interviews as evidence. We note that a review of the record shows that the trial court complied with the requirements of § 908.08(3) when it assessed whether the interviews could be admitted pursuant to that statute. We likewise note that M.H. was also produced for examination during the trial in compliance with § 908.08(5).

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

and a lie; he was subject to cross-examination; and he provided answers to the questions asked of him, even if Clark was disappointed with those answers. This satisfies Clark's right to confrontation, and Clark was afforded the right to confront M.H. More specifically, Clark was given "an *opportunity* for effective cross-examination," which is "not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *See Fensterer*, 474 U.S. at 20. There is, thus, no violation and, therefore, no error to invoke the plain error doctrine.

### III. Clark did not receive ineffective assistance of counsel

¶20 Clark additionally argues that he received ineffective assistance of counsel as a result of his trial counsel's failure to object to the introduction of the recordings of the forensic interviews and M.H.'s live testimony as violations of his right to confrontation and he is, therefore, entitled to a new trial. We again disagree.

¶21 "Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant is guaranteed the right to effective assistance of counsel." *State v. Balliette*, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334. A defendant must show two elements to establish that his or her counsel's assistance was constitutionally ineffective: (1) counsel's performance was deficient; and (2) the deficient performance resulted in prejudice to the defense. *Id.*

¶22 "An ineffective assistance of counsel claim presents a mixed question of fact and law." *State v. Pico*, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95. "We will not reverse the circuit court's findings of fact unless they

are clearly erroneous." ***Id.*** "We independently review, as a matter of law, whether those facts demonstrate ineffective assistance of counsel." ***Id.***

¶23 Here, Clark fails the first prong of the analysis because trial counsel cannot be deficient for failing to object to a non-existent violation. As described above, there is no violation of Clark's right to confrontation as a result of M.H.'s live testimony or the introduction of the recorded forensic interviews into evidence. Trial counsel's performance cannot be considered deficient for failing to bring a meritless objection. *See **State v. Maloney***, 2005 WI 74, ¶37, 281 Wis. 2d 595, 698 N.W.2d 583 ("Counsel does not render deficient performance for failing to bring a suppression motion that would have been denied."). Thus, we reject Clark's argument that he is entitled to a new trial based on having received ineffective assistance of counsel.

### IV. The interest of justice do not require a new trial

¶24 Clark finally argues that he is entitled to a new trial in the interest of justice. However, without a violation of his right to confrontation, this argument also fails.

¶25 Pursuant to WIS. STAT. § 752.35, "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried," we may reverse the judgment or order appealed from, "regardless of whether the proper motion or objection appears in the record." A miscarriage of justice may be found when there is "a probability of a different result on retrial such that a new trial in the interest of justice is warranted." *See **State v. Kucharski***, 2015 WI 64, ¶46, 363 Wis. 2d 658, 866 N.W.2d 697. "The power to grant a new trial when it appears the real controversy has not been fully tried 'is formidable, and should be exercised sparingly and with great caution.'"

11

*State v. Sugden*, 2010 WI App 166, ¶37, 330 Wis. 2d 628, 795 N.W.2d 456 (citation omitted). We only exercise our power to grant a discretionary reversal in exceptional cases. *Id.*

¶26    In short, this is not an exceptional case in which the record suggests that the real controversy has not been fully tried or there was any miscarriage of justice. Clark was provided the opportunity to cross-examine M.H., and his right to confrontation was not violated. We, therefore, decline to exercise our power to grant a new trial in this case.

## CONCLUSION

¶27    In sum, we conclude that Clark is not entitled to a new trial and the trial court properly denied Clark's motion. Clark's right to confrontation was not violated and, thus, his arguments for a new trial on the basis of plain error, ineffective assistance of counsel, and in the interest of justice fail. We, thus, affirm the judgment and the trial court's order.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.