COURT OF APPEALS
DECISION
DATED AND FILED

March 25, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1758**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF124

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

STERLING W. KIENBAUM,

    DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Fond du Lac County: TRICIA L. WALKER, Judge. *Affirmed.*

Before Neubauer, P.J., Gundrum, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Sterling W. Kienbaum appeals a circuit court order denying his WIS. STAT. § 974.06 (2023-24)[1] motion for plea withdrawal, a new restitution hearing, sentence modification, or resentencing.  Kienbaum argues the State improperly withheld evidence pertaining to the amount of loss his victim suffered and therefore he should be permitted to withdraw his plea, be relieved from his restitution stipulation, or receive sentence modification or resentencing. We reject Kienbaum's arguments and affirm.

## BACKGROUND

¶2     This is the second time this case is before us.  Kienbaum and others engaged in a fraudulent scheme whereby Kienbaum's company, which sold scrap metal by the pound, would fill scrap automobiles with extra weight, sell them to Sadoff Iron and Metal ("Sadoff"), and then remove the added weight.  The State originally charged Kienbaum with racketeering and five theft counts.   The fraudulent seven-year scheme netted Kienbaum millions.

¶3     Pursuant to a plea agreement, Kienbaum pled no contest to one count of racketeering and one count of theft.  In exchange, the State moved to dismiss and read in the remaining charges, and the parties were free to argue an appropriate sentence.   A multi-day restitution hearing was scheduled before sentencing.

¶4     After the first day of restitution testimony, but before any financial experts testified, the State and Kienbaum adjourned for negotiations.   They returned to court one day later and advised that they had reached a stipulation.

---

[1]  All references to the Wisconsin Statutes are to the 2023-24 version.

Specifically, in exchange for Kienbaum prepaying $6 million in restitution before sentencing, the State would agree to recommend a sentence of no more than eight years' initial confinement. Kienbaum remained free to argue an appropriate sentence.

¶5 The parties also advised the circuit court regarding Sadoff's pending civil action against Kienbaum. Sadoff's civil litigation counsel advised the court that Sadoff did not "object to the resolution that's been reached between the State and the defendant; however, we don't believe that the $6 million is the full measure of damages … [and] we're not waiving our right to otherwise recover those damages." On July 24, 2018, based in part on the "agreement of the parties as stated on the record," the court ordered Kienbaum to pay restitution to Sadoff in the amount of $6 million.

¶6 On August 28, 2018, the circuit court sentenced Kienbaum to prison. On January 24, 2019, Kienbaum filed a postconviction motion for sentence modification asserting that his sentence was excessive and that his resolution of Sadoff's civil suit pursuant to a confidential settlement agreement constituted a new factor. Kienbaum filed a copy of the confidential agreement and argued that no one knew at the time of sentencing that "Kienbaum and his companies would step to the plate and make a substantial financial commitment to resolve that [civil] case." The court denied the motion determining the sentence was not excessive and resolution of the civil case was not a new factor warranting sentence modification. We affirmed. *State v. Kienbaum*, No. 2019AP680-CR, unpublished slip op. (WI App Sept. 23, 2020).

¶7 In July 2022, Kienbaum filed the underlying Wis. Stat. § 974.06 motion for plea withdrawal, a new restitution hearing, sentence modification, or

resentencing. The motion was based on Kienbaum's assertion that Sadoff "knowingly used inaccurate measures of the loss it incurred as a result of this crime to artificially inflate its restitution award and to increase the financial and criminal liability of Kienbaum."

¶8 Broadly, Kienbaum's allegations related to an opinion that Sadoff's expert, Scott Shaffer, included in his September 21, 2016 damage report. Shaffer, a forensic accountant, was retained by Sadoff to quantify the damages Sadoff suffered as a result of Kienbaum's fraudulent actions. Shaffer also testified at Kienbaum's preliminary hearing on behalf of the State. In his 2016 report, Shaffer's ultimate damage conclusion was calculated

> by comparing the gross profit percentage earned during the Damage Period to Sadoff's average gross profit percentage earned from June 2015 through July 2016 ("Post-Damage Period"). This comparison quantifies the difference between the profit percentage earned while Sadoff was overpaying [Kienbaum's] Entities and the profit percentage earned after Sadoff stopped purchasing from [Kienbaum's] Entities.

Using this method, Shaffer calculated Sadoff's damages to be $14,324,495.

¶9 Shaffer also included in an appendix to his report three "Sanity Checks." He testified these were other ways of looking at damages and a way to check the validity of his gross-profit damage number. Shaffer explained the first sanity "check was to look at the material costs as a percentage of sales during the period the alleged fraud was taking place and compare it to the material costs as a percentage of sales after the alleged fraud was taking place." Under that approach, Shaffer calculated damages to be $15,650,110.

¶10 Shaffer's next sanity "test was to look at the fluff yields[,] … meaning the amount of waste as a percentage of total input into the shredder, the

amount of waste during the alleged fraud was higher, as a percentage, than the amount of waste after the alleged fraud." Under that approach, Shaffer calculated Sadoff's damages to be $15,872,985.

¶11 Finally, and at issue in this case, Shaffer participated in a demonstration he called the "Shredder Observation" sanity test. In this test, Shaffer and others, including Donald Krueger, who was a co-actor in Kienbaum's fraudulent scheme, conducted a simulation where they attempted to recreate the fraud. They weighed ten cars, filled them with one or two bobcat scoops of dirt, and weighed the cars again. Shaffer's report included a spreadsheet detailing each of the ten cars that included each car's weight before and after the dirt was added. The spreadsheet also contained a few notes about each car's simulation. Examples include: "2 bobcat scoops, trunk filled" or "Metal/Dirt/Rock; [Krueger] said 'Good load'" or "1.5 scoops of dirt/metal debri[s]; [Krueger] said it looked OK." Based on the Shredder Observation, Shaffer estimated the cars were on average 36.9% heavier with the added dirt.

¶12 In Kienbaum's underlying WIS. STAT. § 974.06 motion, Kienbaum alleged that he did not learn until Krueger's sentencing, which occurred approximately two years after his own, that Krueger had objected to the Shredder Observation sanity test. At Krueger's sentencing, Krueger's counsel told the circuit court that Krueger had objected to the simulation because the dirt used in this sanity check contained metal punchings, which made the dirt heavier than what was used in the fraudulent scheme. Counsel argued that the other participants to this simulation disregarded Krueger's complaints. Krueger's counsel also asserted that because the dirt in this sanity check was heavier than what was used in the fraudulent scheme, Shaffer (and Sadoff) had artificially increased the damage amount.

5

¶13     Kienbaum then obtained an affidavit from Krueger attesting to the comments from his sentencing.  In the current postconviction motion, Kienbaum argued Krueger's information constituted newly discovered evidence that also "call[ed] [Kienbaum's] sentence and restitution obligation into question."  He argued the State improperly withheld this evidence in violation of *Brady*.[2]  He sought plea withdrawal, a new restitution hearing, sentence modification, or resentencing.

¶14     The circuit court scheduled a postconviction hearing.  In anticipation of that hearing, the newly-assigned prosecutor began reviewing the case file.  The case file included a transcript of Shaffer's deposition from the civil case.  During that deposition, Kienbaum's counsel and Shaffer discussed photographs that were taken of the Shredder Observation.  Specifically, when questioned about whether there were "bits of recyclable material, metals and the like, was there any of that in the dirt," Shaffer testified that he would have to go back and look at the photographs.  Shaffer told Kienbaum's counsel that the photographs were not used to form his opinion, they were "strictly just to document the observation."

¶15     After reading the deposition transcript, the postconviction prosecutor reached out to Shaffer to request the photographs.  Shaffer provided the prosecutor with the photographs, a video from the simulation, and a two-page handwritten chart with notes from that day.  The prosecutor provided those materials to Kienbaum.

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

¶16    At the postconviction hearing, Kienbaum argued the State committed another *Brady* violation by failing to turn over these materials earlier. He argued these new discovery items bolstered his motion for plea withdrawal, a new restitution hearing, sentence modification, or resentencing.

¶17    The State disagreed, and it argued the items were not material and therefore *Brady* was not implicated.  The State also argued that Kienbaum's postconviction motion should be denied because Krueger's objections to the sanity check were previously known to Kienbaum.  The State emphasized that Kienbaum's expert had authored a report in anticipation of the restitution hearing that stated the expert had interviewed Krueger about the Shredder Observation, and, based on Krueger's observations, the expert opined the dirt used in the simulation was too heavy and not a proper sanity check.

¶18    Following an evidentiary hearing, the circuit court denied Kienbaum's postconviction motion.  The court first determined that Kienbaum knew of any issues with Shaffer's sanity check.  It cited Kienbaum's expert's report and the specific passages that had critiqued Shaffer's sanity check.  The court also observed that the Shredder Observation was simply a check on Shaffer's estimation of damages.  This check was not the ultimate value conclusion.  As to the photographs, video, and handwritten notes from the sanity check, the court concluded there was no *Brady* violation because these items were not material.  In support, the court again observed that these items related to the sanity check, Kienbaum was already aware of the issues with this sanity check, and this sanity check was not an independent valuation method.

¶19    Because the circuit court determined the information was not newly discovered evidence and there was no *Brady* violation, the court denied

Kienbaum's request for plea withdrawal, a new restitution hearing, and sentence modification. As for Kienbaum's request for resentencing, the court denied his motion and determined Kienbaum failed to establish the sentencing court relied on inaccurate information during sentencing. Kienbaum appeals.

## DISCUSSION

¶20 Kienbaum renews his arguments on appeal for plea withdrawal, a new restitution hearing, sentence modification, or resentencing. We address each in turn.

### I. Plea Withdrawal

¶21 "After sentencing, a defendant who seeks to withdraw a guilty or no contest plea carries the heavy burden of establishing, by clear and convincing evidence, that withdrawal of the plea is necessary to correct a manifest injustice." *State v. McCallum*, 208 Wis. 2d 463, 473, 561 N.W.2d 707 (1997). Plea withdrawal is committed to the circuit court's discretion. *Id.* We will reverse the court only if it has erroneously exercised its discretion in denying a plea withdrawal request. *Id.*

¶22 On appeal, Kienbaum seeks plea withdrawal on the basis of newly discovered evidence. He argues that at the time he entered into the plea agreement, he was unaware that Krueger had not validated the Shredder Observation sanity check. He also asserts that he did not have the handwritten notes, photographs, or video of the Shredder Observation. Kienbaum contends these items are newly discovered evidence and the State violated his right to exculpatory evidence pursuant to *Brady* by withholding this information.

¶23    To warrant plea withdrawal on the basis of newly discovered evidence, a defendant must show by clear and convincing evidence that:

> (1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative.

*McCallum*, 208 Wis. 2d at 473.  "If the defendant proves these four criteria by clear and convincing evidence, the circuit court must determine whether a reasonable probability exists that a different result would be reached in a trial." *Id.*

¶24    In order to establish a *Brady* violation, a defendant must show: (1) the State suppressed the evidence in question; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the determination of the defendant's guilt or punishment.  *State v. Rockette*, 2006 WI App 103, ¶39, 294 Wis. 2d 611, 718 N.W.2d 269.  Evidence is material only if there is a reasonable probability that, had it been disclosed to the defense, the result of the proceeding would have been different.  *Id.*

¶25    We begin with Kienbaum's claims relating to Krueger's revelations about the Shredder Observation sanity check.  We agree with the circuit court that the evidence surrounding Krueger's objections to the Shredder Observation was not newly discovered evidence and was not improperly withheld by the State.  Rather, as recognized by the court, the record reflects that, at the time of the restitution hearing, Kienbaum's expert had already worked with Krueger to develop his critiques of Shaffer's Shredder Observation.

¶26    Specifically, in anticipation of the restitution hearing, Kienbaum's expert authored a report stating, in part, that he interviewed Krueger on April 5,

9

2018 and Krueger told the expert that he "was present at and observed Mr. Shaffer's 'sanity check.'" Based on their conversation, Kienbaum's expert opined, in part:

> The Shaffer Report's "sanity check" of the purportedly "excess" dirt / waste contained in [Kienbaum's] loads is not representative of actual loads received from [Kienbaum]. I understand this is because dirt weighed during the testing came from a different part of Sadoff's yard. I also understand there were various metal pieces included in the test loads which could make the loads significantly heavier (about two to three times). For example, iron weighs approximately five times more than loose dirt.

¶27 Kienbaum's expert report undermines Kienbaum's current claims that he did not learn of this information until approximately two years after sentencing. We conclude that Krueger's purported new revelations regarding this sanity check do not constitute newly discovered evidence warranting plea withdrawal.

¶28 We next turn to Kienbaum's claims that he should be permitted to withdraw his plea because the State improperly withheld handwritten notes, photographs, and a video of the Shredder Observation. The circuit court concluded that Kienbaum failed to establish this information was material and therefore no *Brady* violation occurred. We agree.

¶29 To the extent Kienbaum argues these items show the dirt used in the Shredder Observation was heavier than the dirt used in the scheme, we have already determined that Kienbaum knew about these critiques as discussed above. The withheld information relates only to Shaffer's Shredder Observation sanity check. However, Shaffer unequivocally testified that this sanity check was not an independent valuation method, but rather simply a method to check whether his ultimate value conclusion, which was based on Sadoff's books and records, was

reasonable. Further, at the postconviction hearing, Shaffer testified that had he testified at the restitution hearing, his testimony would have been consistent with his May 1, 2018 updated report and those opinions "did not derive either in whole or in part from the weighing observation."

¶30 Because Kienbaum failed to establish that Krueger's objections to the Shredder Observation were newly discovered evidence and because Kienbaum failed to establish that the withheld photographs, video, and notes were material under *Brady*, Kienbaum has not demonstrated that he should be permitted to withdraw his plea in order to correct a manifest injustice.

## II. Restitution hearing

¶31 Kienbaum next argues that the circuit court erred by failing to vacate the stipulated restitution order based on his claims of newly discovered evidence and *Brady* violations. However, because we have already determined Krueger's revelations regarding the sanity check were not newly discovered evidence, and *Brady* was not implicated by any withholding of the photographs, video, or handwritten notes, it follows that the court did not err by failing to vacate the stipulated restitution order on these bases.

## III. Sentence modification or resentencing

¶32 We next turn to Kienbaum's claims regarding sentence modification or resentencing. To be entitled to sentence modification on the basis of a new factor, Kienbaum must first prove by clear and convincing evidence the existence of a new factor. *See State v. Harbor*, 2011 WI 28, ¶36, 333 Wis. 2d 53, 797 N.W.2d 828. A new factor is defined as a fact or a set of facts that is "*highly relevant to the imposition of sentence*, but not known to the [circuit court] at the

time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties." *Id.*, ¶40 (emphasis added). To be entitled to resentencing, Kienbaum must prove by clear and convincing evidence that (1) the information presented at sentencing was inaccurate and (2) the circuit court actually relied on the inaccurate information at sentencing. *See State v. Tiepelman*, 2006 WI 66, ¶26, 291 Wis. 2d 179, 717 N.W.2d 1.

¶33 Both of Kienbaum's sentencing claims are premised on his claims of newly discovered evidence and *Brady* violations. Kienbaum argues he is entitled to sentence modification because "the new evidence presented creates a dynamic where Mr. Kienbaum was sentenced based upon a misunderstanding of the loss incurred by Sadoff." Alternatively, Kienbaum asserts he is entitled to resentencing because the circuit court relied on inaccurate information during sentencing, namely "that the scheme in question definitively yielded a $6 million loss to Sadoff." Kienbaum argues that if the "newly discovered evidence" discussed above "had not been improperly withheld, this information would have helped Mr. Kienbaum rebut the claims against him and to challenge the veracity of the statements of Sadoff's staff at sentencing."

¶34 We conclude Kienbaum is not entitled to sentence modification or resentencing. As for sentence modification, Kienbaum has not established the existence of a new factor. We have already determined that Krueger's revelations were known to Kienbaum at the time of sentencing and did not constitute newly discovered evidence. As to the photographs, video, and handwritten notes from the sanity test, Kienbaum has not established the existence of these items was highly relevant to the imposition of sentence. *See Harbor*, 333 Wis. 2d 53, ¶40.

This is especially true considering the parties stipulated to the restitution amount and the Shredder Observation was never used an independent measure of value.

¶35 As for resentencing, Kienbaum has not established that the circuit court relied on inaccurate information at sentencing. *See **Tiepelman***, 291 Wis. 2d 179, ¶26. During postconviction proceedings, the court found that at the time of sentencing, "the information in front of the Court is accurate as far as it's a stipulation and that stipulation should not be overturned." We agree. The record reflects that Kienbaum knew at the time he entered the $6 million restitution stipulation that his expert had worked with Krueger to offer critiques of Shaffer's Shredder Observation sanity test. Because Kienbaum knew of this information, Kienbaum has not established that his stipulated restitution amount should now be deemed inaccurate. *See **id.***

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.